NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0873n.06

No. 11-5228

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 09, 2012*

LEONARD GREEN, Clerk

PATTY CLEVELAND,

     **Plaintiff-Appellant,**

v.

SOUTHERN DISPOSAL WASTE
CONNECTIONS,

     **Defendant-Appellee.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

_____/

BEFORE:    DAUGHTREY and CLAY, Circuit Judges;  CLELAND, District Judge.[*]

    **CLAY, Circuit Judge.**  Plaintiff Patty Cleveland appeals the district court's order granting summary judgment in favor of her former employer, Defendant Southern Disposal Waste Connections. Plaintiff alleges that after she was denied various positions within the company and filed a number of complaints, Defendant engaged in racial discrimination against her based on the failure to promote, took actions of retaliation, created a hostile work environment, and permitted a constructive discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq*.

    For the reasons set forth below, we **AFFIRM** the judgment of the district court.

_____

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

**BACKGROUND**

Plaintiff is an African American woman formerly employed by Defendant, Southern Disposal Waste Connections (Southern Disposal), a waste collection business. In 2001, Plaintiff worked as a waste-hauling driver and then in 2006 transitioned to a customer service representative until her resignation on January 14, 2008. During the relevant time period, Tim Fadul (Fadul) and Randy Cannon (Cannon) served, respectively, in the capacity of district manager and supervisor for the Defendant.

A.      **Plaintiff's Sex Discrimination and Retaliation Allegations**

On September 21, 2005, Plaintiff filed a complaint with the Equal Employment Opportunity Commission (EEOC) wherein she alleged sex discrimination and retaliation. According to the complaint, Plaintiff's sex discrimination charge stemmed from an incident in which the operations manager and Fadul required her to drive a garbage truck, but they allowed a male employee to decline the assignment. Plaintiff alleged in her complaint that if she refused to drive the garbage truck, then Fadul would consider her inaction as a refusal to work, which could possibly lead to her termination.

On January 12, 2006, Plaintiff amended her EEOC complaint to include a second charge of sex discrimination and retaliation. Plaintiff alleged in her amended complaint that over a four-day period, Defendant paid a black male more money to drive the garbage truck compared to her. Plaintiff also stated that Defendant retaliated against her by assigning her to drive the garbage truck and receive less pay after she previously filed a sexual harassment claim when the company was known as Ecco. Plaintiff did not seek relief for the alleged Title VII violations raised in both her

2

2005 and 2006 complaints, but she argues that the filing of those charges constituted "the protected activity which Defendant later retaliated against her in violation of Title VII." On November 30, 2006, the EEOC issued a "dismissal and notice of rights" letter to Plaintiff, which stated that it was closing Plaintiff's file after finding no violation of Title VII.

## B.     Plaintiff's Promotion Requests

During her employment at Southern Disposal, Plaintiff applied for, but was denied, a promotion to the position of dispatcher on two separate occasions. Plaintiff first applied for the dispatch position in 2006. Defendant stated that it denied Plaintiff's promotion because Fadul transferred Lashaundra Jackson, an African American woman, from her position as customer service representative to the position of interim dispatcher. Fadul explained in his declaration that he hired Jackson because she had experience with dispatch duties while Plaintiff did not have the same level of dispatch experience or a performance record comparable to Jackson's. Plaintiff applied again for the dispatch position in 2007. Defendant selected Felicia Williams, also an African American woman, for the position. Fadul stated that he awarded Williams the dispatcher position because of her prior work performance record and because she had a flexible schedule that was necessary for the position.

In April 2007, Plaintiff applied for a shop coordinator position. Defendant hired Robert Lingle, a white male, for the position because Lingle had ten years of experience directly related to the position and Plaintiff had no such comparable experience.

Approximately three months later in July 2007, Plaintiff applied for the position of customer service manager. Defendant declined to hire Plaintiff after she admitted during an informal

interview that "she had no experience supervising a group of employees, directing their work, guiding their performance, or disciplining employees." Instead, Defendant selected Marcie Wright, a white female, for the position. Wright possessed a number of years of management experience.

## C.     Plaintiff's Suspension from Southern Disposal and Subsequent Resignation

On October 3, 2007, while serving as a customer service representative, Plaintiff received a cash payment of $110 from a customer. According to company protocol, Plaintiff was required to place the money in a sealed envelope and deposit it into a locked drop box. On the following day, the customer service manager went to retrieve the prior days payments from the lock box and noticed that the sealed envelope containing Plaintiff's payment was missing.[1] Defendant conducted an investigation, which included interviewing witnesses and reviewing payment receipts, and discovered that Plaintiff somehow mishandled the customer's payment. When Plaintiff was unable to provide an explanation for the missing payment, Defendant issued Plaintiff an unpaid, two-week suspension.

On October 4, 2007, Plaintiff contacted Southern Disposal's human resources department complaining of discrimination and retaliation. Four days later, on October 8, Plaintiff sent a follow up email to human resources claiming that she was discriminated and retaliated against by Defendant after the company (1) removed Plaintiff from her current position without explanation; (2) refused to promote her to the position of customer service manager; (3) refused to issue a rejection letter after she refused to sign a document; and (4) falsely accused her of stealing money. Plaintiff also

---

[1]Defendant stated that eighty dollars was missing from the sealed envelope.

alleged that Defendant retaliated against her after she sent an email to her supervisor, Cannon, about misleading information with respect to the customer payment.

On November 12, 2007, Plaintiff met with Fadul. Following their meeting, Fadul offered Plaintiff a voluntary severance package. Plaintiff declined Fadul's offer and continued to work in her same position with no loss of pay, benefits, or responsibilities. On November 14, 2007, Plaintiff filed another charge with the EEOC and alleged race and age discrimination and retaliation. Plaintiff stated in her complaint that she applied for but was denied the dispatcher and shop coordinator positions and alleged that Defendant selected less qualified and younger candidates for the position. In addition, Plaintiff claimed that she suffered retaliation for filing her 2005 EEOC complaint, mishandling the customer payment, and also being offered a severance package.

### D.  Plaintiff's Allegations of a Hostile Work Environment

Plaintiff claims that management and other employees made disparaging remarks about her. Plaintiff's deposition testimony states that she experienced a hostile work environment during various points of her employment at Southern Disposal as co-workers commented on her personality and work ethic. Plaintiff recalled one co-worker calling her names, including "dummy" and "wagon butt" while another co-worker called Plaintiff "nut brains." Plaintiff stated that she reported the comments to Cannon, her supervisor, but the issue was never resolved and the harassment continued. In fact, Plaintiff recalls Cannon calling her a "troublemaker." Plaintiff also remembered the same co-worker who referred to her as "wagon butt" also told Plaintiff that "nobody likes you." The same co-worker also told Plaintiff that people "just don't trust you . . . that's why you haven't gotten anywhere in this company."

On January 11, 2008, Wright, a company supervisor, issued Plaintiff a written warning for an unexcused absence. That same day, Plaintiff met with Wright to discuss the unexcused absence, but she felt that Wright was hostile towards her. Plaintiff claimed that after her meeting with Wright, she experienced shortness of breath and chest pains and she also began crying.

Plaintiff resigned from her position at Southern Disposal on January 14, 2008, and has since received an offer of employment at another employer.

On February 13, 2009, Plaintiff proceeding *pro se*, filed her complaint in federal court alleging claims of racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. After obtaining counsel, Plaintiff filed an amended complaint on January 23, 2010, which included two additional claims—hostile work environment and constructive discharge. In the amended complaint, Plaintiff stated that she suffered retaliation and discrimination on the basis of race when she: (1) applied for but did not get three promotions; (2) was removed from a sales position; (3) was suspended in connection with a missing payment; (4) was offered a voluntary severance package; (5) was constructively discharged; (6) and was subjected to a hostile work environment. Plaintiff sought declaratory and injunctive relief and compensation for all damages available. After the close of discovery, Defendant moved for summary judgment on September 13, 2010. On January 21, 2011, the district court issued an order granting summary judgment to Defendant and dismissed the case with prejudice. Plaintiff timely filed her notice of appeal on February 19, 2011.

# DISCUSSION

## I. Standard of Review

We review a district court's grant of summary judgement *de novo*. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In determining whether summary judgment is appropriate, all inferences are to be made in favor of the non-moving party, and all evidence construed in the light most favorable to that party." *Disc. Tobacco City & Lottery, Inc., v. United States*, 674 F.3d 509, 521 (6th Cir. 2012) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Failure to Promote

Plaintiff raises a Title VII claim of race discrimination on the basis of Defendant's failure to promote her to the positions of dispatcher and customer service manager. *See* 42 U.S.C. § 2000e-2(a)(1).

"To establish a prima facie claim of racial discrimination based on a failure to promote[,] . . . a plaintiff generally must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020–21 (6th Cir. 2000).

Since Plaintiff offers only circumstantial evidence in support of her claim of racial discrimination based on a failure to promote, we apply the burden-shifting analysis set forth in

*McDonnell Douglass Corp. v. Green*, 411 U.S. 792 (1973) and subsequently modified in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, if the plaintiff establishes a prima facie case, then the burden of production shifts to the employer to "articulate some legitimate, nondiscriminatory reason for its actions. If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination." *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2007) (citation omitted). Pretext may be shown if "the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews*, 231 F.3d at 1021. The plaintiff carries the burden of persuasion during each stage of the analysis. *Arendale*, 519 F.3d at 603.

In this case, Plaintiff cannot establish a prima facie case of racial discrimination based on a failure to promote. There is no dispute by the parties that Plaintiff satisfied the first and third prongs of the analysis. Plaintiff is a member of a protected group (an African American woman), and she applied for the positions of dispatcher and customer service manager but was denied the promotions. However, Plaintiff fails to provide any evidence that she was either qualified for either position or that other employees of similar qualifications who were not members of the protected class received a promotion to those positions.[2] The declarations of Fadul and Cannon prove that Plaintiff was not

---

[2]Plaintiff argues that the district court failed to consider evidence contained in the July, 2010 depositions of Ashley Pruett, a former customer service manager, and Henry Weaver, a mechanic for Defendant. However, that evidence was not submitted to the district court before it issued its order granting summary judgment to Defendant on January 21, 2011. Plaintiff filed a motion to supplement the record on May 13, 2011, which was well after the district court entered summary judgment. Nonetheless, the depositions of Ashley Pruett and Henry Weaver do not save Plaintiff's case, and the district court did not err in granting summary judgment to

qualified for the position because she lacked the required experience for the job and did not have a performance record comparable to those selected for the position. Plaintiff's claim is further weakened by the fact that Defendant promoted members within a protected class to receive the promotions. An African American woman was promoted to the position of dispatcher and a white female was promoted to the customer service manager position.

Even assuming that Plaintiff can establish a prima facie case of racial discrimination based on a failure to promote, Defendant has articulated a legitimate non-discriminatory reason for the employment decision. For the dispatcher position, Fadul stated in his declaration that he denied Plaintiff's promotion request because she did not possess the relevant skill set and experience necessary for the position. Fadul explained that the "position required skill at scheduling personnel, trucks, and work volumes" and that the person must also be "detail-oriented" and have familiarity with the company's route manager software. Plaintiff did not have experience in either of those areas, and the person who was ultimately selected had the necessary dispatch experience.

Plaintiff also cannot prove that Defendant's proffered reason for the employment decision was pretextual. *Burdine*, 450 U.S. at 252–53. Plaintiff claims that she was the only candidate that had to respond to a written set of questions. But that reason alone is insufficient to show pretext, and Defendant refutes that argument by basing its employment decision on the fact that Plaintiff was not qualified for the position. Plaintiff even concedes that she never had any management experience, which was a prerequisite for the position. Therefore Plaintiff's proffered reasons has no basis in fact and did not motivate the employment action. *See Dews*, 231 F.3d at 1021. Because Plaintiff failed

Defendant. *See Bowling v. Wal-Mart Stores, Inc.*, 233 F.App'x 460, 466 (6th Cir. 2007).

to establish that her qualifications were the same or superior to those selected and that the disparity in her qualifications alone could warrant a finding of pretext, she cannot prevail on this claim.

### III.    Retaliation Claim

Plaintiff also argues that she established a prima facie case of retaliation after Defendant did not promote her to the positions of dispatcher and customer service manager, despite allegedly being qualified for the position.  In addition, Plaintiff contends that her two-week suspension was in retaliation for her complaints to the company's Vice President about the mishandling of the customer payment and also for her prior EEOC complaints.

To establish a prima facie case of Title VII retaliation, a plaintiff must show that "(1) she engaged in Title VII-protected activity; (2) [Defendant] knew that she engaged in a protected activity; (3) [Defendant] subsequently took an adverse employment action against [Plaintiff]; and (4) the adverse action was causally related to the protected activity." *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2011) (citing *Mickey v. Zeidler Tool and Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008)).

Once a plaintiff establishes "a *prima facie* case, the burden of production of evidence shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for its actions." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 793 (6th Cir. 2000) (quoting *McDonnell Douglas*, 411 U.S. at 802).  The plaintiff bears the burden of persuasion and must demonstrate that the "proffered reason was not the true reason for the employment decision." *Id*. (quoting *Burdine*, 450 U.S. at 256).

There is no dispute among the parties that Plaintiff satisfied the first three elements of her prima facie retaliation claim: (1) Plaintiff engaged in a protected activity by filing three EEOC

charges—a charge on September 21, 2005, an amended charge on January 12, 2006, and a charge on November 14, 2007—as well as an internal EEO complaint against Defendant after she applied for, but was denied a promotion to the positions of dispatcher and customer service manager allegedly because of her race (African American); (2) Defendant knew that Plaintiff filed an EEOC complaint after Defendant's HR department acknowledged receipt of the complaint; and (3) Plaintiff suffered an adverse employment action after Defendant denied her promotions.[3] Thus, only the fourth prong—whether Plaintiff can prove that her adverse employment action was causally related to the protected activity—is at issue.

"To establish the causal connection that the fourth prong requires, the plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in activity that Title VII protects." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 543 (6th Cir. 2003). Retaliation may be proved through either direct or circumstantial evidence. *DiCarlo v. Potter*, 358 F.3d 408, 420 (6th Cir. 2004).

### A.      Dispatcher and Customer Service Promotions

Plaintiff argues that the close temporal proximity between the time she filed her EEOC and EEO complaints and her promotion denials constituted sufficient proof to support her retaliation

---

[3]Defendant does not concede in its brief that Plaintiff suffered an adverse employment action after denying her application for the dispatcher and customer service manager positions. However, "[a] tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Based on this definition, Defendant's decision not to promote Plaintiff to those positions constituted an adverse employment action.

claim. However, temporal proximity alone may not support an inference of retaliation absent other compelling evidence. *See Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [Plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation.").

Plaintiff also attempts to present direct evidence of Defendant's retaliatory act by showing that her EEOC complaints were a "substantial or motivating factor" in Defendant's decision to deny her the promotions for the dispatcher and customer service manager positions. Plaintiff's "direct evidence" is expressed in her deposition, in which she testified that she was not promoted to those respective positions because of her previous EEOC complaints against Defendant and also because her supervisor, Cannon, did not have a good working relationship with her.

"'In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" *Laderach v. U-Haul of Nw. Ohio*, 207 F.3d 825, 829 (6th Cir. 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999) (internal quotation marks omitted). Direct evidence does not require the fact finder to make "any inferences or presumptions." *Id*.

In this case, Plaintiff's deposition does not constitute direct evidence for purposes of her retaliation claim. The deposition transcript does not indicate that her supervisors refused to promote her on the basis of the EEOC complaints nor does the transcript identify any racial discriminatory remarks made by her supervisors. Rather, Plaintiff's purported direct evidence requires the fact finder to make a number of inferences to reach the possible conclusion that Defendant retaliated

against her on the basis of filing the EEOC complaints. Therefore, Plaintiff's evidence of retaliation is indirect because it requires us to make "a series of inferences arising from plaintiff's evidence." *Abbott*, 348 F.3d at 542.

Even reviewing the indirect evidence, Plaintiff's retaliation claim still fails because she cannot establish that either Cannon or Fadul retaliated against her on the basis of the EEOC and EEO complaints. With respect to the customer service position, Plaintiff stated in her deposition that Cannon called Plaintiff a "troublemaker" after she filed her initial charge with the EEO in 2005. But when asked at her deposition whether she believed she did not receive the promotion because of the prior complaints, Plaintiff could not directly connect her complaints to Cannon's actions. Rather, Plaintiff stated that she just felt that "Randy [Cannon] probably just didn't want me working that close with him due to prior reasons that we had - - that he said, whatever, that was, why he didn't want me in his department." And when asked whether she did not get the customer service position because of her race, Plaintiff responded, "I don't know."

Similarly, in regard to the dispatcher position, Plaintiff does not provide either direct or indirect evidence to suggest that she was denied the promotion because of her EEOC and EEO complaints. Plaintiff claims that despite being qualified for the dispatcher position, the positions were never filled on a permanent basis while she maintained employment with Defendant, and the company chose to hire only temporary employees. Defendant's decision to hire only a temporary employee bears no relevance on Plaintiff's retaliation claim. More importantly, the record indicates that Plaintiff was not selected for the position because she simply was not qualified and not as a result of her pending EEOC complaints.

**B.** **Suspension**

Plaintiff makes a similar argument with respect to her two-week suspension. She contends that her suspension for allegedly mishandling a customer payment also constitutes retaliation after she filed an EEOC complaint against the company.

Plaintiff again raises a temporal proximity claim based on the fact that Defendant suspended Plaintiff shortly after she filed her EEOC complaint. For the reasons already discussed in our analysis of Plaintiff's job prospects, Plaintiff cannot establish a prima facie case of retaliation solely on the basis of temporal proximity. She must offer some other indicia of retaliatory conduct. *See Parks v. City of Chattanooga*, 74 F.App'x. 432, 438 (6th Cir. 2003) ("Temporal proximity. . . does not support an inference of retaliatory discrimination, particularly where . . . [an employer's decision] is readily explainable on non-retaliatory grounds that have not been shown to be pretextual."). Plaintiff offers no additional evidence to suggest that Defendant retaliated against her because of a protected activity.

In addition, Defendant articulated a legitimate non-discriminatory reason for administering Plaintiff's suspension, and Plaintiff cannot overcome the burden of showing that the explanation is pretextual. Plaintiff received her two-week suspension after Defendant reasonably concluded that Plaintiff was responsible for the mishandling of the cash payment, as she was the last person to have the money in her possession. Plaintiff acknowledged that she was only person who had the customer's full payment. Therefore, as the district court found, "Defendant clearly had a legitimate and sound factual basis for assigning blame to Plaintiff since she admitted to possessing the full payment." Thus, Plaintiff cannot establish that Defendant retaliated against her by administering a

two-week suspension for losing a customer payment after she filed an internal complaint with her employer. The record does not support Plaintiff's allegations of retaliation.

## IV.    Hostile Work Environment

Plaintiff also alleges a claim of hostile work environment based upon retaliation. To prevail on a Title VII claim of retaliatory hostile work environment a plaintiff must show that (1) she engaged in activity protected under Title VII; (2) the defendant was aware that the plaintiff engaged in the protected activity; (3) the plaintiff suffered "severe or pervasive retaliatory harassment by a supervisor; and (4) there was a causal connection between the protected activity and the . . . harassment." *Morris*, 201 F.3d at 792.

The issue of whether a hostile work environment exists depends on a number of factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). We consider the totality of circumstances to determine whether the alleged conduct is sufficiently severe or pervasive. *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

The district court found that Plaintiff's evidence did not establish a prima facie case of a retaliatory hostile work environment. However, Plaintiff argues that the district court ignored relevant facts in the record which established a hostile work environment. These include: (1) that her supervisor, Fadul, retaliated against her for her protected activity "by instructing other employees to refrain from assisting her"; (2) that Randy Cannon refused to investigate Plaintiff's complaint that other employees, mainly Sammie Kimbrell, made disparaging remarks; (3) that after Plaintiff filed

her internal EEO complaint, Plaintiff was denied a number of promotions; (4) that Plaintiff was falsely accused of mishandling a customer payment and was subsequently suspended; and (5) that Plaintiff endured an overall hostile work environment from the employees as a result of her protected activity.

We previously discussed Plaintiff's denial of promotions, suspension, and the retaliation allegations and concluded that those claims are unsubstantiated. The remaining allegation in support of Plaintiff's hostile work environment claim involves a lack of assistance by her supervisor and disparaging remarks from her co-workers. Although Plaintiff can establish that she engaged in a protected activity by filing her EEOC complaints and that Defendant was aware of these complaints, the remainder of Plaintiff's factual assertions do not support a claim for a hostile work environment.

After conducting a totality of the circumstances review, the record is void of any evidence that Defendant's actions constituted retaliation that was severe or pervasive enough to create a hostile work environment. The majority of Plaintiff's allegations of offensive conduct do not contain a discriminatory or retaliatory animus. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotation marks omitted). In addition, Plaintiff's allegations of a hostile work environment amount to a few isolated incidents that were infrequent and harmless, and even when combined, still did not create a severe or pervasively hostile work environment. Plaintiff also failed to show how any of the alleged comments of retaliation interfered with her work performance. Thus, Defendant's

conduct did not create a retaliatory hostile environment. Therefore, Plaintiff failed to make a prima facie showing of her hostile work environment claim based on retaliation.

### A.    Constructive Discharge

Lastly, Plaintiff brings forth a constructive discharge claim. Plaintiff argues that Defendant's decision to demote and then remove her from the customer service representative position and then offer a severance package, supports her claim of constructive discharge.

"To demonstrate a constructive discharge, Plaintiff must adduce evidence to show that 1) the employer . . . deliberately created intolerable working conditions, as perceived by a reasonable person, and 2) the employer did so with the intention of forcing the employee to quit." *Logan v. Denny's Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001) (internal quotation marks and citation omitted). When evaluating a claim of constructive discharge, we consider "both the employer's intent and the employee's objective feelings." *Id*. at 569. "'A constructive discharge exists if working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002) (quoting *Yates v. Avco Corp.*, 819 F.2d 630, 636–37 (6th Cir. 1987)). "A plaintiff must show that the employer intended and could reasonably have foreseen the impact of its conduct on the employee." *Id.*

The district court properly determined that Plaintiff failed to provide sufficient evidence to satisfy the elements of a constructive discharge. The district found that the "record does not show that the conditions under which Plaintiff was working were so intolerable that a reasonable person would have felt compelled to accept Defendant's offer and resign." We agree. Defendant took

reasonable steps to address the concerns about co-worker harassment raised by Plaintiff. While Plaintiff's demotion and the change in her job assignment were certainly unfortunate from her point of view, our judgment would not compel a reasonable person in Plaintiff's shoes to resign. To be sure, there is evidence that Plaintiff was not pleased with management or some of her co-workers. But as previously explained in our discussion of Plaintiff's hostile work environment claim, Plaintiff's evidence of harassment and disparaging comments were isolated to only a few incidents and by a few individuals and were not pervasive enough to significantly alter her working conditions. For that reason, the offer of a severance package should not be viewed as punitive. Rather, Defendant offered Plaintiff a voluntary severance package, which suggests that she had the option to accept the package and was not compelled to resign. Furthermore, Plaintiff never lost any pay or benefits for refusing to accept the severance package, and the record does not indicate that Plaintiff received any pressure from management to accept the package. Accordingly, the record does not compel a finding that Defendant created working conditions that were objectively intolerable to a reasonable person. Therefore, the district court did not err in dismissing Plaintiff's constructive discharge claim.

## CONCLUSION

We conclude that the district court did not err in granting summary judgment to Defendant on Plaintiff's claims of race discrimination based on Defendant's failure to promote, retaliation, hostile work environment, and constructive discharge. Therefore, we **AFFIRM** the judgment of the district court.