NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0720n.06

No. 12-3698

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Aug 06, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| PAULA CRAWFORD, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| v. | ) | OHIO |
| | ) | |
| JP MORGAN CHASE & COMPANY, | ) | |
| | ) | OPINION |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

Before: MERRITT, CLAY, and DONALD, Circuit Judges.

**Bernice B. Donald, Circuit Judge.** Paula Crawford appeals the district court's grant of summary judgment in favor of Chase Bank on her Family and Medical Leave Act (FMLA) interference and retaliation claims. For the reasons explained below, we REVERSE.

**I.**

In May 1995, Paula Crawford began working with Chemical Bank, one of Chase Bank's (Chase) predecessors in Columbus, Ohio. (Page ID 1362.) Since Chase's acquisition of Chemical Bank, Crawford has consistently worked for Chase.[1] Crawford's present appeal focuses on her

---

[1]Crawford has held a variety of positions, including administrative assistant, collector, Senior Operations Analyst, Project Manager, Quality Analyst, and Senior Compliance Officer–her current position. (Page ID 134, 143-44, 153, 157, 160, 179, 193, 210-11.)

employment as a Project Manager, the elimination of that position, and Crawford's subsequent transfer to the position of Quality Analyst.

In November 2003, while she was working at Chase, Crawford also began working full-time with Safe Auto, an insurance company, as a customer service representative. In March 2005, Crawford, along with other Safe Auto employees, was held hostage at gunpoint by a co-worker. (Page ID 143-145.) As a result of this traumatic incident, Crawford sought professional mental health treatment and was diagnosed with post-traumatic stress disorder (PTSD), anxiety, and depression. (Page ID 142-147, 149, 151.)

In September 2005, Chase promoted Crawford to the position of Project Manager and she remained stationed in Columbus, Ohio. This position allowed Crawford to apply legal knowledge that she acquired during her studies in law school. For example, Crawford performed Regulation AB (asset backed securities) review of contract servicing agreements for Chase's Quality Audit and Default Processing group. (Page ID 1436.) Crawford also ensured that Chase complied with all of the servicing agreements. (*Id.*) In this position, Crawford's primary remote supervisor was Nancy Gravine, who was based in Michigan. (*Id.*) Crawford's secondary remote supervisor was Marsha Fogle, who was based in Phoenix, Arizona. (*Id.*)

In late 2006, Crawford requested a laptop computer and the assistance of temporary workers for data entry from Gravine. (Page ID R.43, 172.) Crawford did not receive an answer to her request. From January to March 2007, Crawford took approved FMLA leave for her continued

anxiety and depression. (*Id.*) When Crawford returned from FMLA leave, she was assigned to a different supervisor, Parrish McIntosh. Crawford renewed her request for a laptop computer and data entry support staff when she returned from her leave, but the requests were denied. Fogle rejected the requests due to budget constraints. Crawford alleges that at least two individuals in lower-level positions received laptop computers during the same time period that she made her requests.

Beginning in the summer of 2007, a series of conversations took place via email among high-level managers that eventually resulted in Crawford's position being transferred to Phoenix and Crawford being reassigned to an ostensibly lesser position upon her return from FMLA leave. Crawford alleges that these emails show Chase's intention to demote her to a lesser position.

On September 27, 2007, Marsha Van Dam, Crawford's new remote supervisor, sent an email to Fogle regarding the possible transfer of Crawford's position. The email stated, in relevant part: "The functions now performed in Columbus would be Incorporated into current function in Phoenix with no additional head count." (Page ID 361.)

On the same day, Fogle responded: "Lauren [a high-level Chase manager] needs a business case to justify this change. Suggest you have different scenarios [sic] absorb job in Phx without using head count, change to a part time position in Columbus, or position redeployed to another mgr and she is given option if she has skill sets to move. Nancy Lauren needs any files you have on her." (Page ID 362.)

On October 24, 2007, Marsha Van Dam sent an email to Lauren Nicks regarding the elimination of Crawford's position stating: "Has a decision been made regarding Paula. It would be a position elimination (not related to performance or issues). I do not have enough work there to justify an FTE (full-time employee)." (Page ID 359-60.)

Lauren Nicks, a high-level Chase manager, responded with an email to Fogle and Van Dam:

> As much as severance would make for a simplified solution–its not a viable option for us.... Based on the growth in broader Fogle team... -*we can't justify eliminating a position*. We can proceed with moving her job function to Phoenix and reassign Paula to a manager based in Paula's location...We need to work with Parrish to determine what function we can realign her to-*change her responsibilities* and manage her new role. If Paula refuses to accept the new responsibility–that will be considered a resignation–which we will accept. Paula's other option is to move to the new role–and we allow her to conduct a job search... but she must be successfully [sic] job function in the role.

(Page ID 359.) (emphasis added).

From December 10, 2007 through February 19, 2008, Crawford again took approved FMLA leave for depression and stress. (Page ID 1438.) Shortly after her return, on March 16, 2008, Crawford's job designation was changed from Project Manager I to Quality Analyst II. (*Id.*) Crawford was informed that her Project Manager I position was transferred to Arizona and Crawford would be assigned to another position based in Columbus, Ohio. (Page ID 1438, 390.) In this new position, Crawford would now report to Mike McCall, a former peer. (*Id.*)

Crawford initiated the instant action in March 2010, alleging, among other things,[2] that Chase interfered with her rights under the FMLA and retaliated against her for using FMLA leave. (Page ID 1438-39.) Chase presented evidence showing that Crawford's salary, grade level, work hours, work location, and bonus potential did not change. (*Id.*) Crawford testified that her new position included more clerical duties and did not require the same level of legal expertise as the Program Manager I position. Moreover, Crawford testified that her opportunities for career advancement were diminished in her new position. (Page ID 210.)

Chase moved for summary judgment on all claims. (Page ID 1439.) The district court granted Chase's motion. (Page ID 1453.) Crawford now appeals and argues that the district court erred in granting summary judgment to Chase with respect to her FMLA claims.[3]

## II.

We review a district court's grant of summary judgment *de novo. Davenport v. Causey*, 521 F.3d 544, 550 (6th Cir. 2008). Summary judgment is proper if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). Summary judgment is not appropriate if "a reasonable jury could return a verdict for the nonmoving

---

[2]Crawford also alleged that Chase discriminated and retaliated against her because of her disability and race and that Chase violated her privacy. (Page ID 1439.)

[3]The FMLA provides for two theories of recovery: The "entitlement" or "interference" theory which arises under 29 U.S.C. §2615(a)(1) and the "retaliation or discrimination" theory which arises from 29 U.S.C. § 2615(a)(2). Crawford asserts both theories on appeal.

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We draw all justifiable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### A. FMLA Interference

The FMLA entitles an eligible employee to twelve weeks of leave during any twelve -month period if the employee has a "serious health condition." 29 U.S.C. §2612(a)(1)(D). Section 2615(a)(1), the "interference" provision, provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter." The FMLA interference theory also arises from Section 2614(a)(1), which provides that "any eligible employee who takes leave . . . shall be entitled, on return from such leave (A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position. . . ."

To establish a claim for FMLA interference, a plaintiff must show that: (1) she was an eligible employee; (2) her employer was a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave her employer notice of her intent to take leave; and (5) her employer denied her FMLA benefits or interfered with FMLA benefits or rights to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The intent behind the employer's conduct is not relevant to an interference claim. *Arban v. W. Pub. Corp.*, 345 F.3d 390, 401(6th Cir. 2003).

Chase does not dispute that Crawford has met the first four elements of the interference claim. Chase argues, however, that it did not deny Crawford any FMLA benefits to which she was

entitled. Chase asserts that because Crawford returned to the same position immediately after she returned from approved FMLA leave in February 2008, it did not interfere with Crawford's FMLA rights. Crawford argues, however, that Chase interfered with her FMLA rights by transferring her to a non-equivalent position shortly after she returned from FMLA leave.

"An equivalent position is one that is virtually identical to the employee's former position in terms of pay, benefits, and working conditions, including privileges, perquisites and status." 29 C.F.R. § 825.215(a). Furthermore, "[i]t must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." *Id.* "The requirement that an employee be restored to the same or equivalent job [] does not extend to de minimis, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

If the positions are not equivalent, then Crawford was denied a benefit to which she was entitled under FMLA. A denial of FMLA benefits is the equivalent of an adverse action and thus violates the FMLA. *Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007). Therefore, we must determine whether Crawford, for the purpose of Section 2614(a), was transferred to an equivalent position after she returned from FMLA leave.

Although the record does not include a great deal of evidence on this issue, determining whether Crawford was transferred to an equivalent position when she returned from FMLA leave is a question of fact for the jury. *Id.* The only evidence on the equivalency issue consists of Crawford's deposition testimony regarding the substantive changes to her work duties and Chase's evidence regarding Crawford's salary, job location, job description, and location. Viewing the facts in the light most favorable to Crawford, the Quality Analyst II position involved more clerical duties

and did not require the same level of legal expertise as the Program Manager I position. Moreover, Crawford testified that her opportunities for career advancement were diminished in her new position. Even if both positions carried equal pay and benefits, if the Quality Analyst II position did not require a similar level of training and education, then it was not equivalent in terms of status and thus the positions would not be equivalent under the FMLA. *See Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 552 (E.D. Mich. 2003) (finding that an employer did not reinstate the employee to equivalent position when the pay and benefits were equivalent, but the new position was not as sophisticated and did not require the same level of training and education). Because status and duties are a part of the equivalence inquiry, a reasonable fact-finder could determine that the positions were not equivalent. *Parker v. Hanhemann Univ. Hosp.*, 234 F. Supp. 2d 478, 491 (D.N.J. 2002). For these reasons, we find that the district court erred in granting summary judgment in Chase's favor on Crawford's FMLA interference claim.

### B. FMLA Retaliation

Crawford argues that Chase retaliated against her for taking FMLA leave by transferring her to a lesser position shortly after her return from FMLA leave. Chase responds that Crawford's position was eliminated for a legitimate, non-discriminatory business reason.

The FMLA provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To establish an initial prima facie case of retaliation, a plaintiff must show the following by a preponderance of the evidence: (1) that she engaged in an activity protected by the FMLA ; (2) that the defendant knew of this exercise of her protected rights; (3) that

defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Arban*, 345 F.3d at 404. The employer's motive is an integral part of the analysis. *Edgar v. JAC Prods.*, 443 F.3d 501, 508 (6th Cir. 2006).

The first two elements are not at issue. As for the third element, Crawford asks us to adopt the Title VII definition of adverse employment action set forth in *Burlington Northern and Santa Fe Railway. Co. v. White*, 548 U.S. 53, 67–68 (2006): "[A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Page ID 26 (quoting *Burlington*, 548 U.S. at 67–68.). For the forthcoming reasons, we adopt this definition in the FMLA context.

Title VII retaliation and FMLA retaliation statutes are almost identical in wording. FMLA's anti-retaliation statute provides that "[i]t shall be unlawful for any employer to . . . discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Similarly, Title VII's anti-retaliation statute provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e–3(a).

"While other employment statutes are instructive for the standard under the FMLA, they are not dispositive." *See McArdle v. Dell Products, L.P.*, 293 F. App'x 331, 337 (5th Cir. 2008) (citing *Farris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321 (5th Cir. 2003)). "When referencing other

statutes, '[w]e must carefully consider whether there are aspects of [the statutes] that might encourage differing protections and interpretations.'" *Id.* (quoting *Farris*, 332 F.3d at 321). Prior to *Burlington*, the Sixth Circuit applied the same analytical framework for adverse actions under Title VII retaliation and FMLA retaliation claims. *See generally Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (listing the elements for retaliatory discharge under FMLA) (citing *Canitia v. Yellow Freight Sys., Inc.,* 903 F.2d 1064, 1066 (6th Cir. 1990) (listing the elements of a prima facie case for a retaliatory discharge claim under Title VII.) "Our consideration of the statutes before *Burlington* revealed no reasons to apply different interpretations;" and we see no reason to do so post-*Burlington*. *McCradle*, 293 F. App'x at 337 (5th Cir. 2008).

Morever, our sister circuits are in agreement on this issue; the Second, Third, Fifth, Seventh, and Tenth Circuits have adopted the *Burlington* standard in the FMLA anti-retaliation context. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154 (2d Cir. 2011); *DiCampli v. Korman Comtys.*, 257 F. App'x 497 (3d Cir. 2007) (unpublished opinion); *McCardle*, 293 F. App'x at 337-38; *James P. Breneisen, et al. v. Motorola, Inc., et al.*, 512 F.3d 972 (7th Cir. 2008). We join our sister circuits in concluding that *Burlington* applies to retaliation claims under the FMLA.

Applying the standard to case at bar, Crawford "must show that a reasonable employee would have found the challenged action materially adverse." *Garner v. Cuyahoga Cnty. Juvenile Court*, 554 F.3d 624, 639 (6th Cir. 2009) (quoting *Burlington N. v. White*, 548 U.S. 53, 68 (2006)). Our sister circuits provide guidance on when a plaintiff has alleged a materially adverse action under the *Burlington* standard in the FMLA context. In *Breneisen*, several plaintiffs brought FMLA-retaliation claims against their employer. 512 F.3d at 974-975. The Fifth Circuit found that one plaintiff, in

particular, succeeded because he was able to present evidence that he was demoted upon returning from FMLA leave, as well as e-mail communications that, if authenticated, would be evidence of the defendant's retaliatory animus towards him. *Id.* at 977, 979. Similarly, the Seventh Circuit found a materially adverse action under the *Burlington* standard where the plaintiff alleged that the defendant refused to return a substantial account to him upon return from FMLA leave. *McCardle*, 293 F. App'x at 335.

In comparison, the Third Circuit, did not conclude that a materially adverse action occurred where the defendant offered an IT job to the plaintiff after her return from FMLA leave. The court noted that defendant's IT job offer to the plaintiff was appropriate because of her proven IT skills; that her chances of bonus pay would have been markedly stronger in the proposed IT position than in the former General Manager position because of the apartment building's decline in revenue; and finally noted that the mere fact that the IT position would have required a change in location and a longer commute was not sufficient to constitute an adverse action. *DiCampli*, 257 F. App'x at 501.

Here, Crawford has presented evidence that, upon returning from FMLA leave, she was transferred to a lesser position from Project Manager I to Quality Analyst II. Crawford argues that her new position constituted a demotion because the position included more clerical duties, did not require the same level of expertise, and she was required to report to a former peer. There is evidence in the record that suggests that Chase wanted to eliminate Crawford's position, but there was no business reason to justify doing so. Even if we were to assume, *arguendo*, that Crawford was transferred to a seemingly lateral position, the change in job responsibilities support an inference of

an adverse employment action. *See Fisher v. Wellington Exempted Village Schs. Bd. of Educ.*, 223 F. Supp. 2d 833, 843 (N.D. Ohio 2001) (explaining that a lateral transfer is actionable as an adverse employment action if the conditions of the transfer would have been objectively intolerable to a reasonable person and changes in job responsibilities should be considered in this analysis). An email exchange among high-level supervisors demonstrates that there was a change in Crawford's responsibilities in the new role and that these changes might cause Crawford to decline the new position and resign. As such, the change in positions shortly after Crawford's return from FMLA leave, under these circumstances, could deter a reasonable employee in Crawford's position from exercising her FMLA rights. We find that there is a genuine issue as to whether Crawford suffered an adverse employment action when Chase transferred her to a lesser position after she returned from FMLA leave.

With respect to the fourth element, Crawford relies, in part, on the proximity in time between her return from FMLA leave and her transfer. *See Skrjanc*, 272 F.3d at 315 (finding that plaintiff's reliance on the proximity in time between his request for leave and his discharge constituted a showing of a causal connection between the protected activity and the adverse employment action). Crawford was transferred to a new position shortly after returning from FMLA leave. "Such temporal proximity is 'unduly suggestive' and satisfies the causation element of plaintiff's prima facie case at the summary judgment stage." *Parker*, 234 F.Supp. 2d. at 492 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279-80 (3d Cir. 2000). Thus, Crawford has satisfied her burden of setting forth a prima facie case.

The burden shifts, therefore, to Chase to articulate a legitimate, non-retaliatory reason for the employer's action. *McDonnell Douglas*, 411 U.S. at 802. Chase asserts that its legitimate non-retaliatory reasons for eliminating Crawford's Project Manger I position is based solely on "business reasons." Specifically, Chase wanted to transfer the position to Phoenix, Arizona without adding any additional personnel.

Chase carried its burden and, therefore, Crawford must show that the legitimate reasons offered by Chase are pretextual. *Id.* at 804. Specifically, Crawford must produce evidence that either the proffered reason: (1) had no basis in fact, (2) did not actually motivate the adverse employment action, or (3) was insufficient to warrant the adverse action. *Ladd v. Grand Trunk W.R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). Here, Crawford raises an issue of fact regarding whether Chase's proffered explanation was pretextual by presenting emails from high-level supervisors in her former department. Crawford relies on emails from Nicks, stating that Chase could not justify eliminating Crawford's position, but the position could be moved to the Phoenix office so long as the transfer did not require hiring a new person. (Page ID 359.) These emails also suggest that the transfer of Crawford's position involved at least some ulterior motive to push Crawford out of the company by offering her a lesser position with the hope that she would resign. (Page ID 359-62.) Therefore, Crawford has put forth evidence to show that Chase's legitimate non-retaliatory reason for eliminating her position was potentially pretextual. As such, the grant of summary judgment in Chase's favor on this claim was improper.

## IV. CONCLUSION

Because there are questions of fact about whether Crawford was transferred to an equivalent position shortly after her FMLA leave and whether Chase eliminated Crawford's position for retaliatory reasons, we REVERSE the district court's grant of summary judgment in favor of Chase bank on Crawford's FMLA interference and retaliation claims, and REMAND for further proceedings.

**CLAY, Circuit Judge,** dissenting.

The majority finds that there is a genuine dispute as to a material fact which precludes summary judgment solely because Plaintiff has alleged that the position to which she was moved after returning from leave required less legal work. I disagree. Even taking Plaintiff's allegations in the light most favorable to her, this is specifically the kind of intangible or *de minimis* distinction that does not give rise to a claim under the FMLA. Furthermore, while the standard for summary judgment requires us to resolve all reasonable inferences in favor of the non-moving party, where, as in this case, Plaintiff has not produced any evidence beyond her assertions at a deposition that the two jobs were different, we do not have to credit those assertions in light of the entire record. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012) ("[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Defendant repeatedly granted Plaintiff leave under the FMLA, and her employment history indicates that despite numerous grants of leave, Plaintiff has continued to advance in her career with Defendant. Plaintiff's bare allegations regarding the differences between the two positions, in light of this record, are not enough to create a genuine dispute as to a material fact. *See Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). Accordingly, I respectfully dissent.

A plaintiff seeking redress under the FMLA has two theories available to her in this Court: "(1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). Plaintiff makes claims under both of these theories. First, she claims that Chase interfered with her rights under the FMLA by not returning her to an equivalent position upon her return to work. Next, she claims that Chase retaliated against her for taking FMLA leave. The district court found that as a matter of law, Plaintiff could not prevail on either claim.

### 1.    Interference Under the FMLA

Under the FMLA, "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615. In order to show that a defendant interfered with one's rights under the FMLA:

> [Plaintiff] must establish that (1) she was an eligible employee, (2) [Defendant] is a covered employer, (3) she was entitled to leave under the FMLA, (4) she gave [Defendant] notice of her intent to take leave, and (5) [Defendant] denied her FMLA benefits or interfered with FMLA rights to which she was entitled.

*Hoge*, 384 F.3d at 244. As in *Hoge*, the parties here only contest the fifth prong of this test, *i.e.*, whether Defendant interfered with Plaintiff's FMLA rights.

Chase argues that Plaintiff returned to the same position she held before she left, and that even though her position changed a few weeks later, that position was the equivalent of her former

position. Accordingly, they argue, there was no violation of Plaintiff's rights under 29 U.S.C. § 2614(a)(1). Under that section, an employee who takes leave under 29 U.S.C. § 2612 "shall be entitled, on return from such leave–(A) to be restored by the employer to the position of employment held by the employee when the leave commenced; or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1).

An "equivalent position" is defined as "one that is virtually identical to the employee's former position in terms of pay, benefits and working conditions, including privileges, perquisites and status. It must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a). In addition, "[t]he requirement that an employee be restored to the same or equivalent job with the same or equivalent pay, benefits, and terms and conditions of employment does not extend to *de minimis*, intangible, or unmeasurable aspects of the job." 29 C.F.R. § 825.215(f).

The district court found that the position as a quality analyst was the equivalent of her prior position. Plaintiff does not allege that there was any difference in pay, benefits, or working conditions, but instead argues that her new position required less skill; in particular, she used less of her legal knowledge than she had in her prior position, and had more clerical work. But Plaintiff effectively conceded to the district court that her job duties did not change.

The majority is too quick to accept Plaintiff's assertion that the position required "less" legal work, without examining whether that assertion would even matter or whether the phrase makes sense in the context of the FMLA. Even taking Plaintiff's complaints about the type of work she was doing at face value, if there has not been a change in pay or pay grade, then differences in the complexity of work are the kinds of *de minimis*, intangible, or unmeasurable parts of a job that specifically do not give rise to a claim under the FMLA. *Donahoo v. Master Data Center*, 282 F. Supp. 2d 540, 552 (E.D. Mich. 2003) (collecting cases from the Fourth and First Circuits). The extent to which her new position required her to use skills gained in law school is one of these types of unmeasurable distinctions. Certainly, neither position's responsibilities could include actual legal work, because if either had included such a requirement, then the position presumably would have required admission to the state bar. By the logic that the majority embraces, almost any change in job would give rise to a claim under the FMLA, so long as a plaintiff could claim that a skill learned in their past was devalued in some way. By this reasoning, even a promotion might expose an employer to liability—an administrator at a hospital, for example, might no longer need the skills he or she learned in nursing or medical school, and a primary school teacher who becomes a literacy specialist might no longer need to teach mathematics. In addition, Plaintiff has not provided evidence that would permit a court to make a finding that there was, in fact, more clerical work or that the work required less skill. Accordingly, Plaintiff cannot show that her new position was not the equivalent of her old position, and therefore, cannot show that Defendant interfered with her rights under the FMLA.

Furthermore, even if the positions might be different enough to allow a claim under the FMLA, the evidentiary record in this particular case, taken as a whole, does not support Plaintiff's allegation. Once the moving party has set forth the basis for a motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). This requires the nonmoving party to "go beyond the pleadings" and produce evidence of its position. *Celotex v. Catrett*, 477 U.S. 317, 324 (1986). Plaintiff in the instant case has produced only her own testimony at a deposition as to the duties and responsibilities of the position to which she was transferred. The rest of the record, including other parts of Plaintiff's testimony, suggest strongly that her duties remained the same.

Finally, even if Plaintiff could show that there was a difference in the two positions, she would still be unable to succeed in this claim, because "interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). The district court found—and Plaintiff presents no meaningful argument to contradict the finding—that Defendant had presented evidence of such a business reason. In essence, the department decided it needed to retain Plaintiff, because the group to which she was assigned had more than enough work, but her former position did not have enough responsibilities to justify its existence and this explains her reassignment. Accordingly, even if one construes Defendant's decision to retain Plaintiff as some form of interference, on the uncontradicted record before this Court it would not give rise to a claim under the FMLA.

### 2. Retaliation Under the FMLA

In addition to her claim for interference, Plaintiff alleges that Defendant retaliated against her for using FMLA benefits by shifting her position from project manager to quality analyst. To state a claim for retaliation or discrimination under the FMLA, a plaintiff must show "that: (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008). Because a plaintiff does not need to show direct evidence of that causal connection, *see id.*; *Edgar*, 443 F.3d at 508, this retaliation claim is evaluated under "the familiar burden-shifting test articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Edgar*, 443 F.3d at 508.

Under the *McDonnell Douglas* test, if Plaintiff can make out a *prima facie* claim of retaliation, then the burden shifts to the employer to show "a legitimate, nondiscriminatory rationale" for the adverse employment action. *Id.* But Plaintiff cannot make a *prima facie* showing of retaliation. First, she cannot show an adverse employment action. As noted above, she was transferred to an equivalent position. Her primary argument is that after her transfer, she had to report to Mike McCall, whereas previously, she and McCall had both reported to the same supervisor, Parrish McIntosh. But this is insufficient; as the district court found, and Plaintiff presents no evidence to the contrary, McCall was not in a peer position. While he had been at the same level in the "organizational hierarchy," (R. 55, McCall Deposition, filed Oct. 10, 2011, at 15,) he was responsible for supervision of other employees, something for which Plaintiff was never

responsible. That he became responsible for supervising Plaintiff does not mean that she had been demoted. Furthermore, there was no evidence that this transfer was designed to silence Plaintiff or scare her away from future FMLA requests. The record shows that she was always given leave under the FMLA when she requested it. After her most recent leave she was given raises and eventually promoted, and she was later given permission to work from home. This also eliminates Plaintiff's ability to show a causal connection between her FMLA leave and any adverse consequences. There is no basis upon which this Court can infer that her transfer had anything to do with her FMLA leave, as she had taken leaves repeatedly before and not faced any adverse consequences. To the extent that she can show any adverse consequences, her evidence proves at best that Van Dam bore her some animus, but that animus seems to have been based on personal dislike, rather than retaliation cognizable under the FMLA.

Finally, even if Plaintiff were able to make out her *prima facie* case, Defendant has shown legitimate non-retaliatory reasons for the move. The e-mails between Fogle and Van Dam, for example, show that they made a decision based on the business needs of the unit. Plaintiff has introduced no evidence that shows this reason was pretextual, or any independent evidence of retaliation, and accordingly, cannot prevail on a claim of FMLA retaliation.

For the foregoing reasons, I respectfully dissent.