**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0935n.06

No. 12-4391

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 31, 2013
DEBORAH S. HUNT, Clerk

PAMELA MURPHY,

                Plaintiff–Appellant

v.

THE OHIO STATE UNIVERSITY,

                Defendant–Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

OPINION

**Before: MOORE and McKEAGUE, Circuit Judges; HELMICK, District Judge.**[*]

JEFFREY J. HELMICK, District Judge. Plaintiff-Appellant Pamela Murphy appeals the district court's grant of summary judgment in favor of Defendant-Appellee The Ohio State University ("OSU") as to her claims alleging violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and retaliation in violation of the Family and Medical Leave Act, 29 U.S.C. § 2615(a). For the reasons stated below, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

In September 2009, Pamela Murphy began working as a part-time dispatcher for the OSU Department of Public Safety. When Murphy was hired as a full-time permanent employee on November 22, 2009, she became a member of the local chapter of the Fraternal Order of Police

---

[*] The Honorable Jeffrey J. Helmick, United States District Judge for the Northern District of Ohio, sitting by designation.

Union and the terms and conditions of her employment became subject to a collective bargaining agreement ("CBA") between OSU and the union. The CBA includes two sets of base wage rates for union members. The first set specified hourly rates for employees hired on or before June 30, 2008. The second group establishes the base hourly rate for new employees hired on or after July 1, 2008; the base rate increased at the beginning of each of the first three years of the CBA. After the third year of the CBA, the base compensation for new employees is determined by other sections within the CBA.

The CBA also permits the Director of Public Safety to utilize discretion to offer a new employee "a wage rate commensurate with [the new employee's] experience compared to that of an existing Bargaining Unit member." If an employee is hired above the applicable base pay rate for a new employee, the employee's compensation is determined by other provisions of the CBA article dealing with compensation.

Before working for OSU, Murphy worked as a part-time dispatcher for the Ohio cities of Grandview Heights and Upper Arlington during 2007 and 2008. The Human Resources Department concluded Murphy's work experience equaled approximately two years of full‑time employment and offered to pay her an hourly rate just above that paid to a male employee who had worked for OSU as a dispatcher for approximately a year and a half. Murphy's hourly rate of pay was set at $17.50, and she received an additional $0.50 per hour "shift differential" when she was assigned to a shift which began between 3:00 p.m. and 7:00 a.m.

In June 2010, OSU hired Matthew Robbins to fill another full-time dispatcher position. Robbins previously spent nine years as a public safety dispatcher in Marion County, Ohio. His starting wage at OSU was $20.35, which was equivalent to the highest rate paid to any current dispatcher. After Robbins was hired, Murphy requested that OSU increase her hourly rate so that

2

it was in line with Robbins's rate. When OSU denied her request, Murphy filed suit, alleging violations of the Equal Pay Act, Title VII, the Age Discrimination in Employment Act, ("ADEA") and the Fair Labor Standards Act.

Subsequently, on September 24, 2011, an officer with the Columbus Police Department cited Murphy for disobeying his commands. On that date, the lot in which Murphy typically parked when arriving at work was closed because of a football game. Murphy stopped at the barricades blocking the lot entrance and attempted to explain to the officers that she needed to get into the parking lot in order to go to work. After being told she needed to pay to park in that lot, Murphy drove around the barricades, over a curb, and through the grass to reach a parking spot. The officer called out to Murphy as she exited her vehicle and headed into work; Murphy directed the officer to one of her supervisors, who was walking on the sidewalk nearby. Upon request, the OSU Department of Public Safety received a copy of the citation report on September 27, 2011.

On September 30, 2011, Murphy began an unrelated period of leave under the FMLA, returning to work on December 21, 2011. During her leave period, an employee of the City of Grandview Heights contacted OSU, indicating Murphy had applied for a full-time dispatcher position. OSU also learned Murphy had worked as a part-time dispatcher for Grandview Heights during her period of FMLA leave. Several weeks after she returned from her FLMA leave, Murphy received notice that OSU was investigating her September 2011 citation as well as potential misuse of FMLA leave. After an internal investigation and a hearing, Murphy received a three-day unpaid suspension.

Murphy then filed an amended complaint, alleging OSU violated the Equal Pay Act, Title VII, and the ADEA, retaliated against her for filing an EEOC complaint, and interfered with, and retaliated against her because of, her use of FMLA leave. The district court granted OSU's motion

3

for summary judgment, concluding Murphy failed to establish a genuine dispute of material fact as to OSU's affirmative defense to her Equal Pay Act and Title VII claims, and failed to establish a prima facie case of FMLA retaliation. The district court ruled Murphy abandoned her claims under the ADEA and for EEOC retaliation and FMLA interference[1]; it also concluded in the alternative that Murphy abandoned her Title VII claim by failing to apply the legal standard to the facts of her case in her brief in opposition. This appeal followed.

## II. STANDARD

This court reviews a district court's grant of summary judgment *de novo*. *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004). Summary judgment is appropriate "if the movant shows . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant is not entitled to summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Simmonds v. Genesee County*, 682 F.3d 438, 444 (6th Cir. 2012) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all factual inferences in the light most favorable to the nonmoving party. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008).

## III. ANALYSIS

### A. EQUAL PAY ACT CLAIM

The Equal Pay Act prohibits employers from paying an employee a lower wage than that paid to employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a

---

[1] Murphy did not appeal these rulings.

system which measures earnings by quantity or quality of production; or (iv) a differential based on any . . . factor other than sex . . . ." 29 U.S.C. § 206(d)(1). A plaintiff may establish a prima facie case under the Equal Pay Act by showing "an employer paid different wages to an employee of the opposite sex for substantially equal work." *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000). Once the employee establishes a prima facie case, the employer "must prove by a preponderance of the evidence that the wage differential is justified by one of the four affirmative defenses set forth in the Equal Pay Act." *Id.*; *see also Balmer v. HCA, Inc.*, 423 F.3d 606, 612 (6th Cir. 2005) ("employer must prove that sex provides *no part* of the basis for the wage differential in order to prevail on summary judgment") (internal quotation marks omitted). If the employer carries its burden of proving an affirmative defense, the employee then bears the burden of producing evidence to identify a genuine dispute as to whether the employer's proffered reason is pretextual. *Balmer,* 423 F.3d at 613 (*citing Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 n.7 (6th Cir. 1998)).

The parties agree that Murphy carried her burden of establishing a prima facie case under the Equal Pay Act, as she is paid less as a full-time dispatcher than a male holding the same position. OSU asserts this pay differential does not violate the Equal Pay Act because it is based on a factor other than sex – the number of years in which Murphy and Robbins respectively worked as police dispatchers before becoming employed by OSU. At the time Robbins was hired, OSU employed three dispatchers at the highest pay rate of $20.35 per hour; two of those dispatchers had ten years of experience, while the third had roughly nine years of experience. OSU concluded Robbins's nine years of experience as a dispatcher for the Marion County Sheriff's Office made it appropriate to set his hourly wage at the same level. OSU combined Murphy's two years of part-time experience with two employers and credited her with two years of full-time experience. At that time, OSU did

5

not employ any dispatchers with two years of experience, but offered Murphy a base rate that was $0.50 higher than the hourly rate it paid to Garrett Pugh, a male dispatcher with approximately one and a half years of experience.

Murphy does not contest the district court's contention that "[i]t is well settled that industry-related experience is a 'factor other than sex' and may legitimately explain wage differentials for otherwise equal work." *Murphy v. The Ohio State Univ.*, No. 2.11-cv-238, 2012 WL 4499027, at *3 (S.D. Ohio, Sept. 28, 2012) (*quoting Mallison v. Haworth, Inc.*, 488 F. App'x 88, 91 (6th Cir. 2012)). Nevertheless, Murphy asserts OSU's years of experience justification is not permitted under the CBA. While she concedes the CBA provides the Director of Public Safety with discretion to offer a new employee "a wage rate commensurate with [his or her] experience compared to that of an existing Bargaining Unit member," Murphy claims the CBA violates the Equal Pay Act by permitting OSU to exercise its discretion regarding compensation in an arbitrary and capricious manner, without any measurable guidance to determine experience. At OSU, newly hired dispatchers received credit for their years of experience as "a public safety dispatcher," and not for work experience in any other field, including law enforcement. Murphy's argument fails because, as she admits, it is clear OSU takes nothing into account as experience other than the new employee's years of experience as a full-time or part-time police dispatcher.

Murphy does not explain how an apparently objective standard of evaluation permits OSU to violate the Equal Pay Act. OSU did not credit Robbins with seven more years of experience than Murphy because he is male and she is female, but because he worked as a public safety dispatcher for seven more years than Murphy. OSU produced uncontested evidence that it set Robbins's and Murphy's starting wages in the same manner in which it sets starting wages for any individual, male or female, who is hired as a dispatcher and has prior work experience as a dispatcher – by

6

identifying current employees with equivalent years of work experience and offering the new employee a comparable starting rate.

Moreover, the fact that OSU defines experience as only years of experience as a dispatcher, instead of considering the applicant's longevity, education, type of police dispatching, or knowledge of and familiarity with OSU environment, operations, and Mutual Aid Agencies, as Murphy advocates, does not make OSU's selection of the experience metric arbitrary or capricious.[2] The years‒of‒experience standard is easily and objectively identifiable. Murphy's contention that OSU could measure experience in a manner which would provide a more meaningful and job-specific evaluation of an applicant's abilities does not invalidate the standard OSU has chosen and applied. *See EEOC v. J.C. Penney Co., Inc.*, 843 F.2d 249, 253 (6th Cir. 1988) (adopting the "legitimate business reason standard [as] the appropriate benchmark against which to measure the 'factor other than sex' [affirmative] defense" and rejecting the EEOC's proffered "more closely linked" alternative).

This court previously has concluded that years of relevant work experience was a factor other than sex which justifies starting wage differentials between male and female employees. *See Hicks v. Concorde Career College*, 449 F. App'x 484, 486 (6th Cir. 2011) (factor other than sex justified pay differential based on comparison of male employee's nine months of prior experience with female employees' prior experience of between five and ten years). We affirm the district court's grant of summary judgment because OSU has established an affirmative defense by a preponderance

[2] Murphy also claims the experience standard is arbitrary and capricious because OSU would pay a part-time dispatcher a lower hourly rate than a full-time dispatcher with the same years of experience. Murphy's argument ignores the uncontested fact that the CBA governs the terms and conditions of employment for full-time dispatchers only, and has no bearing on part-time dispatchers.

7

of the evidence and Murphy's contentions do not identify a genuine dispute of material fact that OSU's explanation is pretextual.

## B. TITLE VII CLAIM

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a). "A Title VII claim of wage discrimination parallels that of an [Equal Pay Act] violation insofar as it incorporates the [Equal Pay Act's] affirmative defenses." *Beck-Wilson v. Principi*, 441 F.3d 353, 369 (6th Cir. 2006) (*citing Washington County v. Gunther*, 452 U.S. 161, 167-71 (1981)). "[C]laims for sex-based wage discrimination can be brought under Title VII even though no member of the opposite sex holds an equal but higher paying job." *Henry v. Lennox Indus., Inc.*, 768 F.2d 746, 752 (6th Cir. 1985) (*quoting Gunther*, 452 U.S. at 168).

The district court ruled "the same analysis that results in the failure of [Murphy's Equal Pay Act] claim also serves to dispose of her related Title VII claim," and also deemed Murphy to have abandoned her Title VII claim because "although [she] sets forth the standard for a Title VII claim in her memorandum in opposition, she does not present actual argument specifically related to that particular standard as it relates to the facts of this case." *Murphy*, 2012 WL 4499027, at *3-4. While the district judge did not explain why he proceeded to deem Murphy's Title VII claim abandoned after he ruled that claim lacked merit because OSU already had established the affirmative defense of a "factor other than sex," OSU has carried its burden of proof and therefore we affirm the district court's grant of summary judgment. *See Beck-Wilson*, 441 F.3d at 369 ("An employer may . . . avoid liability under a Title VII wage discrimination claim if it can establish one or more of the four affirmative defenses in the [Equal Pay Act].").

8

## C. FMLA RETALIATION

FMLA retaliation claims based on circumstantial evidence are evaluated pursuant to the *McDonnell Douglas* burden-shifting framework. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001). A plaintiff may establish a prima facie case "by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). If the plaintiff carries her burden of proof, the burden shifts to the employer "to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Id.* "If the [employer] succeeds, the burden shifts back to the plaintiff to show that the [employer's] proffered reason is a pretext for unlawful discrimination." *Id.*

The district court concluded Murphy failed to establish a causal connection with regard to her FMLA retaliation claims and OSU presented uncontested evidence that the timing of its investigation was based on a legitimate, non‑retaliatory reason. On appeal, Murphy does not clearly identify the adverse employment action she believes OSU took. In her complaint, she alleges she was "the victim of . . . retaliation by being investigated and recommended for corrective action." At various times on appeal, she claims OSU (1) had no basis to discipline her for working at Grandview Heights while on FMLA leave from OSU; (2) purposefully waited to investigate the traffic citation until after she returned from FMLA leave in order to prejudice her ability to obtain exculpatory information from witnesses; and (3) lacked a legitimate non-discriminatory reason for suspending her for three days without pay. The district court characterized her "theory of her claim . . . [as] speculat[ion] that Defendant retaliated against her for taking FMLA leave solely because

9

Defendant conducted its investigation after she returned from that leave." *Murphy*, 2012 WL 4499027, at *7.

In order to demonstrate that a challenged employment action is prohibited, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse . . . ." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006); *see also Crawford v. JP Morgan Chase & Co.*, No. 12-3698, 2013 WL 3984999, at *5 (6th Cir., August 6, 2013) (adopting *Burlington Northern* definition of adverse employment action in the FMLA context). In addition to terminations and pay reductions, demotions and negative changes in job responsibilities generally are sufficient to create a genuine issue of material fact as to whether the plaintiff suffered an adverse employment action. *See Crawford*, 2013 WL 3984999, at *6. Thus, it seems unlikely the fact of the investigation itself is sufficient to satisfy the materially adverse employment action element – rather it appears the investigation at worst is nothing more than a petty slight, minor annoyance, or simple lack of good manners. *See Kyle-Eiland v. Neff*, 408 F. App'x 933, 941 (6th Cir. 2011) (*quoting Burlington Northern*, 548 U.S. at 68). Murphy's complaints about the timing of and manner in which OSU conducted the investigation seem far closer to complaints that OSU failed to do what the CBA requires of it than to a sufficient basis for an FMLA retaliation claim.

Conversely, the outcome of the investigation – Murphy's three-day suspension without pay – would satisfy the adverse employment action element of the prima facie case. *Burlington Northern*, 548 U.S. at 71-72; s*ee also Mitchell v. Robert de Mario Jewelry, Inc.*, 361 U.S. 288, 292 (1960) ("For it needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions."). The district court did not explicitly address the suspension as a basis for Murphy's retaliation claim, focusing instead on what it considered to be the absence of a causal connection between Murphy's theories as to OSU's

10

motivation for conducting its investigation when she returned from leave and the investigation itself. Murphy does not expressly challenge this aspect of the district court's decision on appeal, though she offers the general assertion that OSU had no basis to discipline her for working at Grandview Heights while on FMLA leave. Even if we assume, however, that Murphy has presented her three‑day unpaid suspension as the challenged adverse employment action, Murphy still may not prevail on this issue.

OSU asserts it investigated and suspended Murphy after she returned from FMLA leave because Murphy showed poor judgment during the situation with the Columbus police officer and she worked at Grandview Heights while on FMLA leave despite the fact that her medical documentation stated she could not work at all during her leave period. OSU also argues Murphy must demonstrate its proffered non‑retaliatory reason is a pretext for discrimination.

A plaintiff may show an employer's proffered reasons are pretextual by showing those reasons have no basis in fact, did not actually motivate the employer's action, or were insufficient to warrant the action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Murphy asserts OSU's proffered reasons are pretextual because (1) the CBA sets the timeframe for investigations and OSU did not follow that timeframe; (2) OSU intentionally waited to begin the investigation in order to prejudice Murphy's ability to obtain exculpatory information; (3) the charges against her were baseless; and (4) OSU failed to act with due diligence in its investigation. She argues summary judgment was improper because a jury could draw an inference of unlawful retaliation from OSU's conduct.

This court has adopted the honest belief rule at the pretext stage of the evaluation of discrimination claims. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). "[I]n order for an employer's proffered non-discriminatory basis for its employment action to be considered

11

honestly held, the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id*. at 807. The employer's decision-making process need not be optimal, or leave no stone unturned; "[r]ather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action." *Id.* If the employee proves the employer failed to do so, the employer's decision-making process is "unworthy of credence . . . [and] any reliance placed by the employer in such a process cannot be said to be honestly held." *Id.*

Murphy argues OSU's investigation of the events leading to the citation she received for failure to obey an officer's orders was flawed. She asserts a union representative could have participated in the investigation while she was on FMLA leave and unavailable. Further, Murphy notes Hunter could have contacted Murphy or her physician to clarify any questions he had regarding Murphy's medical leave documentation. Even assuming Murphy's contentions are true, however, it is not evident that these or other possible flaws undermine the reasonableness of the investigation.

Further, the fact that OSU investigated Murphy for working for Grandview Heights while on FMLA leave is not evidence of pretext. It is well settled "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave." *Seeger*, 681 F.3d at 284 (*quoting Allen v. Butler County Comm'rs*, 331 F. App'x 389, 395 (6th Cir. 2009) (emphasis removed)). Shortly before Murphy returned to work, OSU learned she had worked for Grandview Heights during her FMLA leave. Murphy fails to identify any evidence that this was not the real reason for, or was not sufficient to warrant, the investigation. *See Hall v. Ohio Bell Tel. Co.*, --- F. App'x ---, No. 12-4032, 2013 WL 2986991, at *7 (6th Cir., June 17, 2013) (concluding

12

employee failed to produce evidence to rebut employer's assertion it investigated the employee "in good faith based on evidence suggesting that she might have been abusing . . . FMLA leave").

We conclude OSU is entitled to summary judgment because Murphy has failed to carry her burden of identifying evidence from which a reasonable jury could conclude OSU's stated reasons for disciplining her were a pretext for discrimination. Even if it was not optimal, OSU's investigation identified the pertinent facts and witnesses, and provided Murphy with due process by sharing the information it gathered and holding a hearing at which Murphy was represented by counsel and union representatives. The temporal proximity of Murphy's leave and OSU's disciplinary proceedings alone does not establish OSU's stated reasons are pretextual. *See Skrjanc*, 272 F.3d at 317. Further, Murphy fails to identify evidence sufficient to permit a reasonable jury to conclude OSU's actions actually stemmed from an impermissible retaliatory motive. Therefore, her claim fails and OSU is entitled to summary judgment.

## IV. CONCLUSION

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of OSU.