THAPAR, Circuit Judge.
Small towns are no stranger to fractious school-board politics. Maple City, Michigan is no exception. The school-district superintendent and school-board president both had strong personalities, which made for tense board meetings and heated disagreements. Some controversies even made their way into the local paper. And now one has made its way into federal court. Joan Groening, the former superintendent, took time off work for medical reasons. Not long after, and in the midst of a squabble with the board, she resigned. She now claims that the board violated the Family and Medical Leave Act.
*629 I.
Joan Groening was the superintendent of Glen Lake Community Schools. A few years ago, she decided to undergo a long-needed hip replacement surgery that required six weeks of medical leave. Eventually, she returned to work part-time. But just as Groening was getting back into the swing of things, her elderly mother fell ill. So Groening took intermittent leave to care for her throughout the rest of that year.
All of Groening's time off began to wear on the school board's nerves. After Groening missed yet another meeting, one board member told Groening that she was "disappointed" that they were holding "another critical meeting" without her-and that the district had "been spending too much time" working around Groening's schedule. R. 64-15, Pg. ID 708. And soon after, the board president told one of his colleagues that Groening's time away would be "subject to accountability on her annual evaluation." Id . at Pg. ID 724.
A few days later, the board asked Groening for a breakdown of the leave she had taken that school year. So Groening created a spreadsheet summarizing her time off and sent it to the board. Between her leave, vacation, and business trips, Groening had already been away for twelve weeks. Concerned about Groening's frequent absences, the board told her that it was hesitant to approve her travel plans for an upcoming conference. For Groening, it seems, that was a bridge too far. She sent in her notice of retirement and accused the board of retaliating against her for taking leave. She informed the board that she would be parting ways with the district at the end of the following school year.
Shortly after Groening's announcement, the board voted to audit the district's business office. The board directed the auditors to review, among other things, whether the district had a proper method for tracking administrators' time off. Its reasons were twofold. First, the board suspected that the district had not been maintaining proper records because Groening had responded to its leave-records request with a spreadsheet of her own making. And second, Groening's contract provided for ninety days of paid leave per year and a payout for any unused days when she retired. Thus, the board needed to clear up any discrepancies before the end of the following school year.
But Groening did not wait until the end of the following school year as she had planned. Instead, she resigned the day before the auditors sent their report to the board. In her resignation, she stated that she had no choice but to step aside because of the board's continued intent to retaliate against her for her lawful use of leave. "Enough is enough," she said. R. 59-2, Pg. ID 243. Groening filed this suit not long after, claiming that the board violated the Family and Medical Leave Act.
II.
The Family and Medical Leave Act entitles eligible employees up to twelve weeks of unpaid, job-protected leave per year. 29 U.S.C. § 2612(a)(1). Employees can use this leave to recover from a serious health condition or to care for an immediate family member with a serious health condition. Id. The Act prohibits employers from retaliating against employees who take such leave, or otherwise interfering with their right to do so. Id. § 2615(a); Hoge v. Honda of Am. Mfg., Inc. , 384 F.3d 238, 244 (6th Cir. 2004). Groening claims the board did both. The district court disagreed and granted the board's motion for summary judgment. Groening now appeals.
*630 This court reviews the district court's grant of summary judgment de novo. Seeger v. Cincinnati Bell Tel. Co. , 681 F.3d 274, 281 (6th Cir. 2012). We take the evidence in the light most favorable to the non-moving party-here, Groening-and ask whether there are any genuine issues of material fact that require submission to a jury. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Daugherty v. Sajar Plastics, Inc. , 544 F.3d 696, 702 (6th Cir. 2008) ; see Fed. R. Civ. P. 56(a). Because there are none, we affirm.
III.
Groening first claims that the board retaliated against her because she went on leave. See 29 U.S.C. § 2615(a)(2) ; 29 C.F.R. § 825.220(c). She offers circumstantial evidence to support this claim, so we apply the McDonnell Douglas burden-shifting framework. Seeger , 681 F.3d at 283 (citing McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ). To establish her prima facie case, Groening must show that the board knew she was engaged in FMLA-protected activity and subjected her to an adverse employment action because of it. Id. The district court granted summary judgment after finding that Groening could not show she suffered an adverse employment action. We begin our analysis there.
Groening concedes that the board did not fire, demote, or discipline her for taking leave. Instead, she says she was constructively discharged. This is a tough row to hoe: Constructive discharge is hard to prove. The employee must show that her working conditions were objectively intolerable and that her employer deliberately created those conditions in hopes that they would force her to quit. Logan v. Denny's, Inc. , 259 F.3d 558, 568-69 (6th Cir. 2001). The doctrine does not protect employees who leave their job "in apprehension that conditions may deteriorate later." Agnew v. BASF Corp. , 286 F.3d 307, 310 (6th Cir. 2002). Instead, employees are expected to stay on the job if they can pursue other forms of relief. See McKelvey v. Sec'y of U.S. Army , 450 Fed.Appx. 532, 535 (6th Cir. 2011).
To show that her working conditions were objectively intolerable, Groening paints the following picture. She says the board subjected her to months of hostility because it believed her leave was holding up the school district's business. One board member told Groening that she was concerned about how much time the district spent working around Groening's schedule. The board president indicated to a colleague that he planned to hold Groening accountable for taking leave in her next performance evaluation. And eventually, fed up with Groening and looking for a reason to get rid of her, the board spearheaded an audit that was designed to find evidence of wrongdoing. The board members then continued to complain that Groening was not doing her job and was "wasting [their] time." R. 64-15, Pg. ID 720. As such, Groening says, she had no choice but to resign.
These conditions, even viewed in the light most favorable to Groening, fall far short of showing constructive discharge. First, Groening did not learn of the board president's comment or the complaints about her performance until after she resigned. These conversations occurred in private emails that Groening did not see until discovery. Since Groening was unaware of them during her employment, they can hardly be said to have created intolerable working conditions. See Laster v. City of Kalamazoo , 746 F.3d 714, 728-29 (6th Cir. 2014) (declining to find constructive discharge based on information *631 the employer had not "actually communicated" to the plaintiff).
Second, this circuit has repeatedly held that an employer's criticism of an employee does not amount to constructive discharge-especially when the employer's criticism is limited to a few isolated incidents, as it was here. See, e.g. , Savage v. Gee , 665 F.3d 732, 739 (6th Cir. 2012) ; Smith v. Henderson , 376 F.3d 529, 534 (6th Cir. 2004) (calling an employee "incompetent" and a "whiner" in front of other employees is normally insufficient to establish constructive discharge); see also Cleveland v. S. Disposal Waste Connections , 491 Fed.Appx. 698, 708 (6th Cir. 2012) (disparaging comments isolated to only a few incidents and by a few individuals do not alter working conditions). And the fact that the board's criticism was directed at Groening's use of FMLA leave does not somehow flip a switch, suddenly making her working conditions intolerable. See Weigold v. ABC Appliance Co. , 105 Fed.Appx. 702, 708-09 (6th Cir. 2004).
Finally, employers are permitted to investigate their employees for wrongdoing, including wrongdoing related to protected leave. See Dendinger v. Ohio , 207 Fed.Appx. 521, 527 (6th Cir. 2006) ("We have repeatedly held ... that neither an internal investigation into suspected wrongdoing by an employee nor that employee's placement on paid administrative leave pending the outcome of such an investigation constitutes an adverse employment action."); see also Murphy v. Ohio State Univ. , 549 Fed.Appx. 315, 320-21 (6th Cir. 2013) (noting that it is not an adverse employment action to investigate an employee's use of FMLA leave). Though there is an inherent tension between an investigating employer and an investigated employee, that tension does not rise to the level of intolerableness necessary to show constructive discharge. See Levenstein v. Salafsky , 414 F.3d 767, 775 (7th Cir. 2005).
Accordingly, Groening has failed to raise a genuine issue of material fact as to whether her working conditions were objectively intolerable. Since she cannot show that she was constructively discharged, the board is entitled to summary judgment on her retaliation claim.
IV.
Groening also argues that the board interfered with her right to take leave. See 29 U.S.C. § 2615(a)(1). To survive summary judgment on this claim, Groening must show that (1) she was an eligible employee, (2) the board was a covered employer, (3) she was entitled to take leave, (4) she gave the board notice of her intent to take leave, and (5) the board denied her FMLA benefits or interfered with her FMLA rights. Hoge , 384 F.3d at 244. The district court held that Groening failed to establish a genuine issue of material fact as to the last element. We agree.
Groening offers two distinct theories of interference. First, she claims that the board interfered with her leave when it conducted an audit and planned to give her a negative performance evaluation. If this sounds familiar, it is because Groening pointed to these same facts in support of the retaliation claim we rejected above. Unable to show that they amounted to constructive discharge, Groening claims that they at least amount to unlawful interference with her FMLA rights, relying on this court's decision in Wysong v. Dow Chem. Co. , 503 F.3d 441 (6th Cir. 2007).
To understand this claim, a closer look at Wysong is in order. In Wysong , we held that an employee could recover for retaliatory discharge under the FMLA's interference theory-not just under the retaliation theory. Id. at 446-47. The reason? When *632 an employer takes an employment action based on an employee's FMLA leave, the employer effectively "denie[s] the employee a benefit to which [she] is entitled." Id . at 447 ; see also 29 C.F.R. § 825.220(c) (prohibiting employers from "us[ing] the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions"). This denial of benefits amounts to interference under the FMLA. Wysong , 503 F.3d at 447. So an aggrieved employee can show interference by demonstrating that her employer "somehow used [FMLA] leave against her and in an unlawful manner." Id. (quoting Bradley v. Mary Rutan Hosp. Assoc. , 322 F.Supp.2d 926, 940 (S.D. Ohio 2004) ). And in Wysong , the employee made this showing by pointing to her retaliatory discharge.
Groening argues that just like the retaliatory discharge in Wysong , the board's audit and planned performance evaluation were based on the fact that she took leave, and thus constitute the denial of a benefit. But this argument extends Wysong too far. No doubt Wysong opened the door to interference-by-retaliation claims. Wysong did not, however, alter this circuit's well-established rule that employees can only recover for an employer's retaliatory actions under the FMLA if they show an adverse employment action. See, e.g. , Daugherty , 544 F.3d at 707 ; Bryant v. Dollar Gen. Corp. , 538 F.3d 394, 400-02 (6th Cir. 2008) ; Spurlock v. Peterbilt Motors Co. Inc. , 58 Fed.Appx. 630, 631 (6th Cir. 2003) (per curiam). Indeed, Wysong and all of the cases it relied upon involved retaliatory discharge. Wysong did not create a category of "retaliation-lite" claims. So regardless of whether Groening labels her claim "retaliation" or "interference," Groening must point to an adverse employment action to succeed.
This she cannot do. The board's decision to conduct an audit was not an adverse employment action. See Murphy , 549 Fed.Appx. at 320-21 ; Hall v. Ohio Bell Tel. Co. , 529 Fed.Appx. 434, 440-41 (6th Cir. 2013) (explaining that "[n]othing in the FMLA prevents employers from ensuring that employees who are on leave from work do not abuse their leave" (citation omitted) ). Nor was the board's planned performance evaluation, given that Groening resigned before it took place. Moreover, as explained above, these actions together did not lead to a constructive discharge. See Wysong , 503 F.3d at 448 (describing how employer's actions "set in motion an unbroken chain of events" that culminated in retaliatory discharge). Groening thus cannot show interference-by-retaliation.
Groening's next interference argument fares no better. She claims that the board interfered with her FMLA rights by requiring her to work while she was recovering from surgery. The record, however, says otherwise. The board hired an interim superintendent to fill in for Groening and did not require her to attend any board meetings during her recovery. Understandably, Groening wanted to stay involved in the district's business while she was away. To that end, she attended a board meeting and occasionally contacted the board and interim superintendent about work-related matters. That was her prerogative, and she cannot now claim that the board interfered with her rights by responding to discussions she initiated.
Groening points to just one instance where the board actually initiated contact with her: its request for a breakdown of her time off. And this de minimis request does not rise to the level of actionable interference. See Tilley v. Kalamazoo Cty. Rd. Comm'n , 654 Fed.Appx. 675, 680 (6th Cir. 2016) (explaining that "under certain circumstances, multiple phone calls from *633 an employer and demands to complete more than simple tasks could rise to the level such that an employee's FMLA leave becomes unjustifiably disrupted"); see also Allen v. Butler Cty. Comm'rs , 331 Fed.Appx. 389, 396 (6th Cir. 2009) (holding that an employer's daily call-in policy for employees on sick leave did not violate the FMLA). Accordingly, Groening has failed to show that the board interfered with her leave by requiring her to work. So, since both of Groening's theories of interference fail, the board was entitled to summary judgment on her interference claim as well.
* * *
We AFFIRM the district court's judgment.