*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0311p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

EUNICE HUNTER,

        *Plaintiff-Appellant,*

    *v.*

VALLEY VIEW LOCAL SCHOOLS,

        *Defendant-Appellee.*

No. 08-4109

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 06-00207—Thomas M. Rose, District Judge.

Argued: June 18, 2009

Decided and Filed: August 26, 2009

Before: KEITH, CLAY, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Karen T. Dunlevey, BIESER, GREER & LANDIS, Dayton, Ohio, for Appellant. Lynnette Ballato Dinkler, DINKLER PREGON, Dayton, Ohio, for Appellee. **ON BRIEF:** Karen T. Dunlevey, BIESER, GREER & LANDIS, Dayton, Ohio, for Appellant. Lynnette Ballato Dinkler, Jamey Todd Pregon, DINKLER PREGON, Dayton, Ohio, for Appellee.

_____

**OPINION**

_____

    JULIA SMITH GIBBONS, Circuit Judge. Plaintiff-appellant Eunice Hunter appeals from the district court's grant of summary judgment in favor of defendant-appellee Valley View Local Schools ("Valley View"). Hunter, a custodian for Valley View, was injured in a car accident in 2003. From 2003 to 2005, she took intermittent periods of leave pursuant to the Family and Medical Leave Act of 1993 ("FMLA") while she underwent three rounds of surgery. Soon after Hunter returned to work in August of 2005, Valley View placed her

1

on involuntary leave. Hunter alleges that Valley View impermissibly considered her use of FMLA leave in deciding to place her on involuntary leave. The district court granted summary judgment in favor of Valley View, finding that Valley View would have taken the same action regardless of Hunter's FMLA leave. Because there is evidence that the FMLA leave was a motivating factor in Valley View's decision, we reverse the grant of summary judgment.

## I.

Hunter joined Valley View as a substitute custodian in 1996 and became a full-time night custodian in 1999. As a night custodian, Hunter's duties included:

> sweeping, mopping floors, waxing, emptying and cleaning waste receptacles, trash, and pencil sharpeners, refilling towel and soap dispensers in restrooms, and toilet tissue, removing cobwebs, cleaning windows, shampooing carpets, dusting, cleaning student desks, polishing furniture, lifting/moving furniture, moving boxes, and minor repairs.

Hunter continued to work full-time until June 16, 2003, when she was in a car accident unrelated to work. The accident caused nerve damage in Hunter's right hand, arm, and foot, and her arthritis in her right knee was aggravated. Consequently, Hunter was out of work for sixty days while she underwent surgery on her right foot. She returned to work on August 18, 2003, but she was limited to working four hours per day, five days per week. Hunter resumed full-time work on November 10, 2003, without any formal restrictions. In the spring of 2004, Hunter's doctor again placed her on a reduced schedule of twenty hours per week for thirty days. Hunter then had two separate surgeries, requiring a ninety-day leave. Hunter returned to work on July 2, 2004, beginning on a reduced schedule and resuming full-time work after one month. Hunter worked full time from August of 2004 until June of 2005. In June of 2005, Hunter had knee surgery necessitating a forty-five day leave. Hunter scheduled each of her surgeries in the summer because she "felt it was more important to be there" when school was in session.

Hunter returned from her third round of surgery on August 18, 2005, with permanent restrictions of no lifting, pushing, or pulling more than ten pounds; and no climbing stairs or ladders. The following month, Valley View superintendent Sherry Parr invited Hunter to a meeting with herself and her principal, Todd Kozarec. At the meeting, Hunter learned

that she would be placed on involuntary, unpaid leave effective the following month.  By letter dated October 3, 2005, Parr formally told Hunter that "as of October 14, 2005, you are hereby placed on unpaid medical leave not to exceed one (1) year based on your doctor's restrictions limiting your ability to perform your job and excessive absenteeism for the past four (4) years."

On June 8, 2006, Hunter filed a civil action in the Court of Common Pleas of Montgomery County, Ohio, alleging violation of the FMLA, as well as failure to accommodate, disability discrimination, and intentional infliction of emotional distress claims under Ohio law.  Valley View removed this action to the United States District Court for the Southern District of Ohio.

In October of 2006, Valley View extended Hunter's involuntary leave for an additional year.  Then, in February of 2007, Hunter's doctor reviewed a list of her job responsibilities and indicated that Hunter could perform them, with the exception of climbing on ladders to change light bulbs.  Hunter was allowed to return to Valley View, where she apparently continues to work.

Following Hunter's return to work, Valley View filed its motion for summary judgment.  In opposition, Hunter presented the deposition testimony of Superintendent Parr. Parr testified that Hunter's use of FMLA leave was one of two reasons she placed Hunter on involuntary leave.  The district court found that this testimony constituted direct evidence that Valley View impermissibly considered Hunter's use of FMLA leave.  Nonetheless, the court concluded that Valley View was entitled to judgment as a matter of law because it would have placed Hunter on involuntary leave in any event due to Hunter's permanent medical restrictions.  Accordingly, the court granted summary judgment to Valley View on Hunter's FMLA claim, declined to exercise pendant jurisdiction over her state law claims, and remanded the remaining claims to the Court of Common Pleas.  Hunter timely appealed.

II.

We review a district court's grant of summary judgment *de novo.  See Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393 (6th Cir. 2008).  Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We must draw all reasonable inferences in favor of Hunter, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Crawford v. TRW Auto. U.S. LLC*, 560 F.3d 607, 611 (6th Cir. 2009).

III.

Hunter alleges that Valley View placed her on involuntary leave based on her exercise of her rights under the FMLA, 29 U.S.C. § 2601 *et seq.* Valley View responds that it placed Hunter on involuntary leave because she was unable to perform the functions of her job and that it would have done so even if she had not taken FMLA leave.

The FMLA entitles an "eligible employee" to up to twelve weeks of leave per year if the employee has a "serious health condition" that prevents the employee from performing the functions of her job.[1] 29 U.S.C. § 2612(a)(1)(D); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005). An employee who utilizes FMLA leave is entitled to be restored to her position, or an equivalent one, when she returns from the leave. 29 U.S.C. § 2614(a)(1). However, an employee who remains "unable to perform an essential function of the position" once her FMLA leave ends is not entitled to restoration or another position. 29 C.F.R. § 825.216(c).

An employer may not discriminate or retaliate against an employee for taking FMLA leave. 29 U.S.C. § 2615(a)(2). In particular, an employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c); *Arban v. West Publ'g Corp.*, 345 F.3d 390, 403 (6th Cir. 2003). Employers who violate the FMLA are liable to the employee for damages. 29 U.S.C. § 2617(a)(1); *see, e.g.*, *Bryant v. Dollar Gen. Corp.*, 538 F.3d 394, 397 & n.1 (6th Cir. 2008) (noting damages awarded pursuant to 29 U.S.C. § 2617). There are two theories of recovery under the FMLA: an interference (or entitlement) theory and a retaliation (or discrimination) theory. *See Grace v. USCAR*, 521 F.3d 655, 669 (6th Cir. 2008). Hunter brings this claim under the latter category.

---

[1]It is undisputed that Hunter is an "eligible employee" who suffers from a "serious health condition."

We have often relied on Title VII precedent to analyze FMLA retaliation claims. *See, e.g.*, *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008); *see also Bell v. Prefix, Inc.*, 321 F. App'x 423, 428 n.2 (6th Cir. 2009) (collecting cases). Recently, however, the Supreme Court reminded us that its Title VII decisions do not automatically control the construction of other employment discrimination statutes. *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2348-49 (2009). The *Gross* Court noted that Title VII "explicitly authoriz[es] discrimination claims in which an improper consideration was 'a motivating factor' [among other, permissible factors] for an adverse employment decision." *Id.* at 2349 (citing 42 U.S.C. § 2000e-2(m)). This statutory authorization forms the basis for the burden-shifting instruction adopted in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258 (1989) (plurality opinion), and followed by *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). *See Gross*, 129 S. Ct. at 2349. By contrast, the Court found that the Age Discrimination in Employment Act ("ADEA") does *not* authorize claims in which the adverse employment action was based both on permissible and impermissible factors. *Id.* at 2350. Consequently, the Court declined to apply the *Price Waterhouse* burden-shifting framework to disparate treatment claims brought under the ADEA. *Id.* at 2351. *Gross* thus requires us to revisit the propriety of applying Title VII precedent to the FMLA by deciding whether the FMLA, like Title VII, authorizes claims based on an adverse employment action motivated by both the employee's use of FMLA leave and also other, permissible factors. We conclude that it does.

We begin by looking at the text of the statute. *See Gross*, 129 S. Ct. at 2350. The FMLA provides in relevant part:

> (1) Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a). Congress delegated authority to the Secretary of the Department of Labor to prescribe regulations to implement the FMLA. *See* 29 U.S.C. § 2654. Among those regulations is the following:

> The [FMLA]'s prohibition against "interference" prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, *employers cannot use the taking of FMLA leave as a negative factor in employment actions*, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c) (emphasis added). Thus, the implementing regulations explicitly forbid an employer from considering an employee's use of FMLA leave when making an employment decision. The phrase "a negative factor" envisions that the challenged employment decision might also rest on other, permissible factors. *Cf.* 42 U.S.C. § 2000e-2(m) (authorizing claim under Title VII where a protected characteristic such as race or sex is "a motivating factor" in adverse employment decision); *see also Gross*, 129 S. Ct. at 2349. We have already held that § 825.220(c) is a reasonable interpretation of the FMLA entitled to deferential judicial review. *See Bryant*, 538 F.3d at 401-02. We therefore conclude that the FMLA, like Title VII, authorizes claims in which an employer bases an employment decision on both permissible and impermissible factors.

In light of our reading of the FMLA through the lens provided by *Gross*, we continue to find *Price Waterhouse*'s burden-shifting framework applicable to FMLA

retaliation claims. Accordingly, if Hunter has presented evidence to establish that Valley View discriminated against her because of her FMLA leave, then the burden shifts to Valley View "to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." *See Daugherty*, 544 F.3d at 707 (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).[2]

In this case, Parr's deposition testimony provides direct support for Hunter's FMLA retaliation claim. Parr testified that she placed Hunter on involuntary leave both because of Hunter's "permanent [medical] restrictions" and also because of her "excessive absenteeism"; that the charge of "excessive absenteeism" was based on a review of Hunter's attendance record, which included her FMLA leaves;[3] and that "most

---

[2]In *Daugherty* and elsewhere, we mistakenly identified the *Price Waterhouse* burden-shifting standard as applicable to all employment discrimination claims based upon direct evidence. *See Daugherty*, 544 F.3d at 707. However, the standard depends not on the type of evidence presented (direct versus circumstantial), but on the type of claim brought (single-motive versus mixed-motive). After *Desert Palace*, we have further modified the summary judgment standard applicable to mixed-motive Title VII claims. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 400 (6th Cir. 2008). We need not decide whether *White* applies to an FMLA retaliation case, however, because Hunter has produced sufficient evidence to survive summary judgment even under the more stringent *Price Waterhouse* burden-shifting standard.

[3]In response to questioning by counsel for Hunter, Parr testified:

A.    Decisions about excessive absenteeism are not based on one year. It is her – it is accumulative [*sic*].

Q.    So you looked at all of her FMLA leaves in addition to [her paid time off], correct?

A.    I looked at her – absentee list. I looked at her attendance report, excuse me, yes.

Q.    Which includes at least three extended FMLA leaves, correct?

A.    Yes, it does.

Q.    Did you count those against her in determining whether her leave was excessive?

A.    I don't understand what you mean by did I count it against her.

Q.    Did you take that into consideration that she missed 12 weeks of leave here and 12 weeks of leave there for FMLA?

A.    The consideration was based on her attendance report and that's part of it.

(Parr Dep. 137, Nov. 7, 2007.)

of" the absences on Hunter's record were due to FMLA leaves.[4] This constitutes direct evidence of impermissible motive because an employer "cannot use the taking of FMLA leave as a negative factor in employment actions."  29 C.F.R. § 825.220(c).

Because Hunter has presented evidence of improper motive, the burden shifts to Valley View to prove by a preponderance of the evidence that it would have placed her on involuntary leave regardless of her use of FMLA leave.  *See Daugherty*, 544 F.3d at 707.  Valley View argues that it placed Hunter on involuntary leave because she was unable to perform the functions of her job.  If this argument found support in the record, it might be sufficient to entitle Valley View to summary judgment.  However, the evidence in the record belies Valley View's position and shows, instead, that Hunter's use of FMLA leave *actually motivated* Valley View to place her on involuntary leave.  "Under the retaliation theory . . . , the employer's motive is an integral part of the analysis" because the FMLA prohibits an employer from taking an adverse action because of the employee's utilization of FMLA leave.  *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 508 (6th Cir. 2006) (emphasis omitted); *see also Heady v. U.S. Enrichment Corp.*, 146 F. App'x 766, 769-70 (6th Cir. 2005) ("To survive summary judgment, [Hunter] must provide sufficient evidence to show that the exercise of her FMLA rights was a *motivating factor* in her [involuntary leave]." (emphasis added) (citing *Gibson v. City of Louisville*, 336 F.3d 511, 514 (6th Cir. 2003))).  When asked directly whether she placed Hunter on involuntary leave solely because of her medical restrictions, Parr could

---

[4]Parr testified:

Q.    And Mrs. Hunter along with the other employees in Valley View are given an allotted amount of sick days and vacation time, are they not?

A.    They are.

Q.    And the vast majority of the time that Mrs. Hunter missed was because of her FMLA leaves, correct?

A.    I would say most of it, uh-huh.

(Parr Dep. 30-31.)

not give a "yes" answer.**5**  To the contrary, Parr insisted that it was Hunter's FMLA leave that caused Parr to take action against Hunter.**6**  At oral argument, counsel for Valley View defended this approach, arguing that Valley View was entitled to consider Hunter's complete attendance record in making its decision.  To the extent that Hunter's record reflected her FMLA absences, however, that is precisely what Congress forbade employers to do when it enacted the FMLA.  *See Bryant*, 538 F.3d at 401.

---

**5**The following exchange between counsel for Hunter and Parr illustrates Parr's stubborn insistence that Hunter's FMLA absences were counted against her:

> Q.    Let's focus on your decision on whether to continue to accommodate her [restrictions] or not.  In October of 2005, you chose to stop accommodating her restrictions, correct?
>
> A.    But it wasn't that singly.
>
> Q.    Did you choose in October of 2005 to stop accommodating Mrs. Hunter's medical restrictions?
>
> A.    That was not the single reason why she was put on unpaid leave.
>
> Q.    It's a yes or no question and you can provide whatever explanation you want but I want you to answer my question.  Did you in October of 2005 decide to stop accommodating Mrs. Hunter's medical restrictions?
>
> A.    In my opinion, it's not a yes or no answer because there are two factors that made that decision.  One was her permanent restrictions and one was her excessive absenteeism.

(Parr Dep. 27-28.)

**6**Parr explained that Hunter's absences inconvenienced Valley View:

> Q.    Up until October of 2005, you testified that you had been accommodating her medical restrictions, correct?
>
> A.    Yes.
>
> Q.    And in October of 2005, you chose to put her on leave as opposed to continuing to accommodate those restrictions, correct?
>
> A.    But it was also because of her excessive absenteeism.  Let me explain this a little bit farther [*sic*] and maybe this will help.  I have a responsibility as an employer to make sure that all of the essential functions of all the jobs in our district are fulfilled.  Because of Mrs. Hunter's excessive absenteeism, I was forced–the school district was forced to continue to get substitute help. Substitutes do not have the same training as the rest of our employees, as–as to the daily, weekly, and monthly routine.  I have to have somebody who's at work a majority of the time in order to make sure that all things are done in our district.

(Parr Dep. 29.)  Parr stated that Hunter's attendance had also been a problem prior to the accident.  (*Id.*)

In sum, Parr's deposition testimony completely undermines Valley View's protestations that no issue of fact remains as to whether it would have made the same decision regarding Hunter even if she had not taken any FMLA leave and precludes summary judgment in Valley View's favor. It remains for the trier of fact to decide whether, despite the direct evidence of retaliatory motive, Valley View would have taken the same action against Hunter. *See Daugherty*, 544 F.3d at 710.

## IV.

For the foregoing reasons, we reverse the grant of summary judgment and remand this case for further proceedings.