## NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0351n.06

Case No. 15-1592

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 27, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TERRY TILLEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| KALAMAZOO COUNTY ROAD | ) | MICHIGAN |
| COMMISSION; KALAMAZOO COUNTY | ) | |
| ROAD COMMISSION BOARD OF | ) | |
| COMMISSIONERS, | ) | |
| | ) | |
| Defendants-Appellees. | | |

___

BEFORE: SILER, SUTTON, and STRANCH, Circuit Judges.

**SILER, Circuit Judge.** This appeal arises from Plaintiff Terry Tilley's allegation that Defendant Kalamazoo County Road Commission ("KCRC") terminated him in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. This case returns after remand, *see Tilley v. Kalamazoo Cty. Rd. Comm'n*, 777 F.3d 303 (6th Cir. 2015), and the district court's second grant of summary judgment in favor of KCRC on Tilley's FMLA claims. For the reasons stated below, we **REVERSE** the district court's grant of summary judgment in favor of KCRC on Tilley's FMLA interference and retaliation claims and **REMAND** for further proceedings in accordance with this opinion.

## I.

Tilley's claims under the FMLA center on his termination from KCRC in August 2011. Prior to his termination, Tilley's supervisor, Travis Bartholomew, tasked Tilley with completing three projects: (1) five employee reprimands related to the improper operation of KCRC equipment ("reprimands"), (2) a police report from an incident at a job site ("police report"), and (3) an updated job classification #3 job description ("job description"). The reprimands were due on July 28, 2011, the police report on July 29, and the job description on August 1. This was the second set of deadlines for these projects. Tilley had failed to meet the first set of deadlines, which resulted in Bartholomew's suspending him for five days starting on July 21.

Although Tilley disputes KCRC's claim that he failed to promptly submit the reprimands and police report, Tilley's FMLA claims primarily revolve around the events that transpired on August 1, the due date for the job description, and afterward. According to Tilley, he was at work completing the job description on August 1 when he "started having cold sweats and feeling clammy," leading him to believe that he was having a heart attack. As a result, a co-worker transported Tilley to the hospital.

Tilley was released from the hospital the following day, and his wife, Wendy Tilley, notified KCRC that Tilley would not be back at work for the rest of the week. On August 8, Wendy Tilley delivered a physician's note to KCRC excusing Tilley from work through October and also requested FMLA paperwork on Tilley's behalf. Tilley submitted his completed FMLA paperwork to KCRC on August 17, 2011, the same day he received his termination notice from KCRC in the mail.

In Tilley's first appeal, he challenged the district court's dismissal of his age discrimination claim under Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"),

M.C.L. § 37.2201 *et seq.*, and his interference and retaliation claims under the FMLA. *See Tilley*, 777 F.3d at 304. This court affirmed the district court's grant of summary judgment in favor of KCRC on Tilley's ELCRA claim but reversed on the FMLA claims. *Id.* at 315. We held that a genuine issue of material fact existed as to whether KCRC was equitably estopped from denying coverage under the FMLA. *Id.* at 314. However, because the district court based its dismissal of the FMLA claims solely on whether Tilley was an "eligible employee," we declined to reach the merits. *Id.* On remand, the district court again granted summary judgment in favor of KCRC on Tilley's interference and retaliation claims under the FMLA. Tilley now appeals the district court's second dismissal of his FMLA claims.

## II.

"We review a grant of summary judgment de novo, construing the evidence and drawing all reasonable inferences in favor of the nonmoving party." *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011) (citing *Martin v. Cincinnati Gas & Elec. Co.*, 561 F.3d 439, 443 (6th Cir. 2009)).

## III.

The FMLA entitles an "eligible employee" to twelve workweeks of leave during any twelve-month period if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Section 2611(11) defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider."

The FMLA provides two distinct theories of recovery: the "interference" or "entitlement" theory and the "retaliation" or "discrimination" theory. *Arban v. West Pub. Corp.*,

345 F.3d 390, 400-01 (6th Cir. 2003). Under the "interference" theory, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by this Act]." 29 U.S.C. § 2615(a)(1). The "retaliation" theory imposes liability on an employer that "discharge[s] or in any other manner discriminate[s] against any individual for opposing any practice made unlawful by this [Act]." *Id*. § 2615(a)(2). Tilley pursues claims under both theories of recovery.

A.

Tilley contends that the district court erred in finding that KCRC did not interfere with his rights under the FMLA. For Tilley to succeed under the "interference" theory, he must demonstrate that:

> (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (citing *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir. 2003)). Unlike a retaliation claim, the motive of the employer is irrelevant for a claim of interference. *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).

The first two prongs of Tilley's prima facie case for interference are not at issue. We resolved the second in this court's prior opinion, *see Tilley*, 777 F.3d at 314, and there appears to have never been a dispute as to the first prong. However, the third prong has sparked some confusion.

In discussing Tilley's interference claim, the district court held that although Tilley "has satisfied his burden as to the first two prongs," he "has not shown he was entitled to leave and

reinstatement." The district court then proceeded to explain that an employer may terminate an employee who is exercising FMLA rights if the adverse action would have occurred regardless of requested leave. This is correct law, but implicates a different prong. Rather, the third prong involves whether Tilley's illness qualified as a "serious health condition." *See Tillman v. Ohio Bell Tel. Co.*, 545 F. App'x 340, 354 (6th Cir. 2013) (explaining that the third prong required plaintiff to demonstrate that "he suffered from a 'serious health condition that ma[de] [him] unable to perform the functions of [his job]'" (alterations in original) (quoting 29 U.S.C. § 2612(a)(1)(D); 29 C.F.R. § 825.112(a)(4))). Generally, this prong may be satisfied by an employee's providing a doctor's certification containing "the date upon which the serious health condition began, the condition's probable duration, the appropriate medical facts regarding the condition within the health care provider's knowledge, and a statement that the employee is unable to perform his position's duties." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 422 (6th Cir. 2004) (citing 29 U.S.C. § 2613(b)). It appears that the FMLA paperwork Tilley submitted on August 17, 2011, met those requirements, and the record is bereft of any real dispute on this issue. Therefore, Tilley has satisfied the third prong.

With respect to the fourth prong, the district court did not explicitly make a determination but noted that Tilley "did not even formally request FMLA leave until August 17, 2011, five days after Defendants decided to terminate him." It is unclear, however, if the district court meant to speak to the notice requirement, as the context of the comment made its relationship to the analysis ambiguous. Regardless, to satisfy the notice requirement, the employee must "provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Further, "[w]hen an employee seeks leave for the first time for a FMLA-qualifying reason, the employee need not expressly assert rights

under the FMLA or even mention the FMLA." *Id*. § 825.303(b). Notice may be given by the employee's spouse, but it must be provided "to the employer as soon as practicable under the facts and circumstances of the particular case." *Id*. § 825.303(a). The notice requirement is not a difficult burden for the employee to meet. *See Wallace v. FedEx Corp.*, 764 F.3d 571, 586 (6th Cir. 2014).

For the purposes of the fourth prong, KCRC had notice of Tilley's intent to use FMLA leave, but it remains unclear whether it was timely. Wendy Tilley's affidavit states that she informed KCRC on August 3, a day after Tilley was released from the hospital, that Tilley would not be at work for the rest of the week. The first time Tilley personally contacted KCRC appears to be when he called Bartholomew's office phone on August 8 to let Bartholomew know that he was still unable to work. At the very latest, KCRC must have had some knowledge of Tilley's intent to rely on FMLA leave by August 8, as evidenced by its preparation of the FMLA "Notice of Eligibility and Rights & Responsibilities" form for Tilley. But this may have been too late. At the same time, the position Bartholomew took in his deposition—that Tilley was obligated to inform him immediately upon going to the hospital—is an unreasonable expectation and not what is contemplated by "as soon as practicable." While this prong is a close one, there are sufficient facts to raise a question for the jury to decide. Furthermore, this prong is unchallenged by KCRC.

The primary dispute concerning Tilley's interference claim lies in the fifth prong. Tilley contends the district court erred in holding that his failure to communicate while on leave did not constitute a protected activity under the FMLA. Specifically, Tilley believes his termination for failing to communicate with KCRC about the location of his pager while he was in the hospital on August 1, 2011, is protected under the FMLA. Although the parties conceptualize Tilley's

interference claim as only one theory, the manner in which they discuss it involves two separate theories. The first theory, principally framed by KCRC, asks whether an employee has a stand-alone right not to have his FMLA leave disrupted by work-related phone calls from his employer. The second theory also implicates work-related calls but asks whether terminating the employee on the basis of his failure to answer those calls constitutes interference. Both theories of interference derive from Bartholomew's attempt to contact Tilley while on leave, which is detailed in Tilley's termination letter. In relevant part, the letter provides that:

> On Monday, August 1, 2011[,] you requested medical treatment and have been off work. During this time I made numerous attempts to contact you and/or your wife[,] and you failed to return any of my calls. You and/or your wife called other personnel, but did not notify me directly according to the Personnel Manual. In addition, we were trying to contact you as we were unable to locate the Emergency Pager. You were on the Duty Rotation the week of August 1, and shared the pager was located in your KCRC truck and [sic] it was not found. Numerous attempts were made by me to contact you[,] and you never returned any of my calls.

KCRC suggests that "communication by an employer with an employee via occasional phone calls regarding institutional knowledge . . . does not . . . rise to the level of interference with an employee's FMLA rights." KCRC relies on a decision where this court found that a company's call-in policy for employees on FMLA leave "neither conflict[ed] with nor diminish[ed] the protections guaranteed by the FMLA." *Allen v. Butler Cty. Comm'rs*, 331 F. App'x 389, 396 (6th Cir. 2009). The decision in *Allen*, however, addressed a fairly narrow issue: "what happens when an employer runs sick leave concurrently with FMLA leave and the employee violates the more stringent requirements of the paid sick leave policy . . . ."? *Id*. at 393. But Bartholomew's calls to Tilley about the emergency pager had nothing to do with Tilley's use of FMLA leave or KCRC's sick leave policy. Therefore, *Allen* provides little guidance in the instant matter.

Much of the heavy lifting in support of KCRC's position falls on cases outside this circuit. In *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009), the plaintiff claimed that phone calls that she received from her supervisor and her temporary replacement about work-related matters constituted interference. The district court disagreed, finding that "[w]hen limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments, employers do not violate the FMLA by making such calls." *Id.* (citing *Kesler v. Barris, Sott, Denn & Driker, PLLC*, 482 F. Supp. 2d 886, 910-11 (E.D. Mich. 2007)).[1] Other circuits have followed the decision in *Reilly*. *See O'Donnell v. Passport Health Commc'ns, Inc.*, 561 F. App'x 212, 217-18 (3d Cir. 2014) (finding that employer's communication with plaintiff regarding whether she was going to accept a new position, her salary, and the status of her medical leave "de minimis contacts" and therefore not actionable); *Sabourin v. Univ. of Utah*, 676 F.3d 950, 961 (10th Cir. 2012) ("In short, the University's request for materials from [plaintiff] was not an impermissible demand for work during FMLA leave. It was a request for a modest, unburdensome effort to enable [plaintiff]'s work to be performed while he was on leave.").

Perhaps, under certain circumstances, multiple phone calls from an employer and demands to complete more than simple tasks could rise to the level such that an employee's FMLA leave becomes unjustifiably disrupted and thereby discouraged. *See Vess v. Scott Med. Corp.*, No. 3:11 CV 2549, 2013 WL 1100068, at *4 (N.D. Ohio Mar. 15, 2013) (finding requests to "complete training prior to [plaintiff's] return from leave, complete reviews of respiratory therapists and enter blood gas data" exceeded "the limited scope of passing along institutional

---

[1] The road from *Kesler* to *Reilly* is not a smooth one. In *Kesler*, the district court found the employer's contact not actionable for three reasons: (1) the plaintiff agreed that it was not inappropriate to be contacted by her employer while on leave; (2) the contact involved documents that the plaintiff had worked on; and (3) the plaintiff was being paid during her FMLA leave. *Kesler*, 482 F. Supp. 2d at 910.

knowledge" and therefore creating a question of fact for the jury); *Zahler v. Empire Merchs., LLC*, No. 11-CV-3163 JG CLP, 2012 WL 273698, at *9 (E.D.N.Y. Jan. 31, 2012) (declining to dismiss interference claim where employer repeatedly called the plaintiff about work, demanded that she complete certain tasks despite her explanation that she needed time to care for her father, and threatened that plaintiff would lose an account if she did not complete certain assignments). But that is not the case here. Rather, the only work-related question Bartholomew sought to ask Tilley involved the location of the emergency pager; KCRC never requested that Tilley perform any work. *Cf. Arban*, 345 F.3d at 402 (holding that there was sufficient evidence for a jury to find interference where during plaintiff's leave, his supervisor called him multiple times, asked him to gather customer lists and pending sales, and requested that he meet with the supervisor). This type of de minimis contact did little, if anything, to disrupt Tilley's FMLA leave and did not discourage Tilley from taking FMLA leave, as evidenced by Tilley's submission of his FMLA paperwork to KCRC even after Bartholomew's attempt to contact him. *See* 29 C.F.R. § 825.220(b) ("Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but *discouraging an employee from using such leave*." (emphasis added)). Accordingly, the district court properly granted summary judgment on Tilley's theory of interference premised on a failure to communicate with KCRC.

The second possible theory of recovery for interference flows from Tilley's termination for failing to respond to Bartholomew's phone calls. Tilley argues that "[t]erminating someone for that reason vitiates the entire purpose of the FMLA, which is to allow someone to take a leave of absence *from work*." This court has observed that "[t]he right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation

[that] an employee will return to work after the leave ends.'" *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006) (alteration in original) (quoting *Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005)); *see also Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1050-51 (8th Cir. 2006) ("[E]very discharge of an employee while [he] is taking FMLA leave interferes with an employee's FMLA rights. However, the mere fact of discharge *during* FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights." (alterations in original) (quoting *Throneberry*, 403 F.3d at 980)). But reinstatement comes with a significant limitation: the FMLA does not "entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3). Therefore, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." *Arban*, 345 F.3d at 401 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).

KCRC maintains that "Tilley was terminated because he failed to complete the tasks assigned to him by his supervisor despite repeated opportunities to do so." In other words, Tilley "would not have retained his job even if he had not taken a leave of absence." Except for the updated job description, which was due on the day Tilley left work to go to the hospital, the other two tasks—the reprimands and the police report—were due before Tilley started FMLA leave. The July 19, 2011, letter detailing Tilley's failure to complete those three tasks and suspending him for five days clearly indicated that it was a "final warning" and that "[a]ny continued performance related deficiencies" would result in termination. With respect to the reprimands,

Bartholomew documented in Tilley's termination letter that while Bartholomew received the reprimands on July 28, they remained inaccurate and were returned to Tilley on the same day with additional comments. As for the police report that was due on July 29, Bartholomew did not receive it until August 3.

Tilley contends that he can rebut KCRC's stated reason for termination with the showing of direct evidence to the contrary. For this, Tilley relies on the paragraph in his termination letter that discussed Bartholomew's attempt to contact Tilley while he was on leave. According to Tilley, "[i]t is obvious that the defendants were blaming [him] for not communicating with Mr. Bartholomew during times that he should have been protected by a leave under the FMLA, which are times necessarily that [he] had no obligation to provide services to the defendants."

Tilley's theory of recovery presupposes KCRC based its termination on what is contained in the paragraph detailing the phone calls Bartholomew made to Tilley while he was on leave. KCRC offers the following explanation concerning the paragraph in Tilley's termination letter:

> Tilley quotes out of context a single paragraph from the fifth page of his six page termination letter as the basis for his claim. However, that paragraph comes well after the three numbered sections on the first three pages of the letter that actually state the reasons for Tilley's termination. The language cited by Tilley is only a portion of three lengthy paragraphs of background information on page 5 of the letter that included a description of both Tilley's prior discipline and the events that occurred on August 1, 2011. The paragraph quoted by Tilley does not state that it is a reason for Tilley's termination. Rather, page one of the letter states that Tilley was terminated for failure to complete any of the same three assignments that had caused his earlier five day suspension.

This interpretation is certainly a reasonable one. However, given the remaining portion of the termination letter, the explanation that KCRC relied on that paragraph in terminating Tilley is equally as strong. The next several paragraphs provide as follows:

Personnel Manual states;

2.5 Time Reporting

All employees are to report promptly for work and remain until the end of their working day.

All employees *must notify their supervisor* within one-half hour of the expected starting time if an unexpected absence occurs. If an employee is unable to notify the supervisor, notification must be made to the Business Office.

All planned absences or authorized use of vacation time must be approved in advance by the department head. It is the responsibility of the department head to report on the appropriate form the absences of employees and forward the information to the Business Office. . . .

Road Commission Rules of Conduct, effective March 28, 2005:

u. Failure to be available for emergency calls to duty or failure to respond to said call and/or work necessary overtime, including failure to have current address and a telephone number on file with the Employer where the employee may be reached in case of necessity.

aa. Any offense of equal magnitude to the above.

*Section 2*:
ln. Failure to notify the dispatcher or, in the dispatcher's absence, the appropriate Supervisor, whenever the employee is going to be absent from his vehicle for the purpose of taking lunch, rest or relief break or any other non-work absence including, but not limited to, accident, illness, etc.

Your termination is in accordance with Personnel Manual.

Further, even Bartholomew's explanation of the paragraph makes its purpose somewhat perplexing. Denying that the paragraph related to Tilley's termination, Bartholomew testified that "we wanted [Tilley] to know that he needed to have contacted us. It's his responsibility as an employee to let us know what his position is and what he's doing. You can't just not come to

work." If the paragraph addressing Tilley's failure to communicate had nothing to do with his termination, why would the termination letter include specific citations to KCRC's personnel manual related to an employee's duty to communicate followed by the sentence, "Your termination is in accordance with the Personnel Manual"? The cited sections from the personnel manual quite clearly match with the factual allegations identified above. At the very least, the meaning of the paragraph is open to reasonable interpretation as to whether it was part of KCRC's reason for terminating Tilley.

Presuming that KCRC terminated Tilley in part due to his failure to respond to the calls about the pager, this still leaves the question as to whether this amounts to direct evidence of interference with his substantive rights under the FMLA. "Direct evidence of discrimination 'must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [the FMLA], but also that the employer acted on that predisposition.'" *Curry v. Brown*, 607 F. App'x 519, 523 (6th Cir. 2015) (quoting *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008)). The cases cited by Tilley involve clearer statements of animus toward an employee's use of FMLA leave than present here. In one case, the employer's director of human resources told the plaintiff that if plaintiff used FMLA leave, he would not have a job when he returned to work. *Daugherty*, 544 F.3d at 708. In another case, the supervisor admitted during her deposition that she counted the plaintiff's FMLA-related absences when she cited the plaintiff for "excessive absenteeism" and acknowledged that most of the plaintiff's absences were FMLA-related. *Hunter v. Valley View Local Sch.*, 579 F.3d 688, 692 (6th Cir. 2009). Unlike *Daugherty* and *Hunter*, there is no direct statement in Tilley's termination letter or by Bartholomew indicating that Tilley's use of FMLA leave motivated his termination. The only way to come to that conclusion would be by inference. However, "[i]f the evidence requires the

jury to infer some further fact, it is not direct evidence." *Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 134 F. App'x 921, 927 (6th Cir. 2005) (citation omitted). As a result, the survival of Tilley's interference claim hinges on the existence of indirect evidence of interference.

In the absence of direct evidence, Tilley may rebut KCRC's reason for terminating him by showing pretext. *See Demyanovich v. Cadon Plating & Coatings, L.L.C.*, 747 F.3d 419, 431-32 (6th Cir. 2014) (examining indirect evidence under the burden-shifting paradigm). "A plaintiff may establish pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *See, e.g.*, *Seeger*, 681 F.3d at 285. Here, the district court found that Tilley failed to demonstrate pretext, noting that Tilley had been issued a final warning by KCRC and still did not complete the assignments on the day they were due. Tilley contends the district court erred because the "the other reasons asserted by the defendant in its termination letter to [him] for terminating his employment were either false or were insufficient for doing so."

With respect to the reprimands, Tilley argues that "the claim that [he] did not provide the reprimands to Mr. Bartholomew before the July 28, 2011 deadline is . . . just plain false, and so it is clearly pretextual." The termination letter, however, does not state that Tilley failed to complete the reprimands on time; rather, it indicates that Bartholomew received the reprimands on the day they were due but sent the reprimands back to Tilley "to address additional comments including what the action prevents, reminders, and a font change." As KCRC explains in its brief, "[t]he problem was with the *content* of the reprimand . . . not merely the submission of [the] document." The fact that KCRC's concern with the reprimands was accuracy should not have been a surprise to Tilley considering that his suspension letter specifically identified the content of the reprimands as a problem.

- 14 -

Next, Tilley avers that KCRC did not have a sufficient basis to terminate him for not delivering the incident report on time. According to Tilley, KCRC had in its possession the incident report before the July 29 deadline because Tilley provided it to his co-worker, Bill DeYoung, and "so under agency principles, the defendants received it then." Agency principles are irrelevant here. The suspension letter tasked Tilley with delivering the incident report to Bartholomew by July 29. Even if DeYoung was at fault for failing to deliver the incident report on time, as Tilley contends, it does not change the fact that it was Tilley's responsibility, not DeYoung's, to ensure the incident report made it to Bartholomew.

As for the job classification, Tilley argues that if it were not for his medical emergency, he would have completed the job description. By virtue of his termination being, in part, based on the unfinished job description, Tilley believes that KCRC terminated him for not working and thereby violated the FMLA. The termination letter's citation to Tilley's failure to complete the updated job classification poses an odd dilemma. On the one hand, it could be viewed as KCRC taking an adverse employment action for Tilley's failure to complete work on August 1, the time that Tilley started his leave. On the other hand, it could be argued that "the wheels of termination" were put in motion prior to Tilley's taking leave on August 1. *Kennebrew v. N.Y.C. Hous. Auth.*, No. 01 CIV 1654, 2002 WL 265120, at *20 (S.D.N.Y. Feb. 26, 2002); *see also Gipson v. Vought Aircraft Indus., Inc.*, 387 F. App'x 548, 557 (6th Cir. 2010) (explaining that although the employer terminated the plaintiff after he requested medical leave, the plaintiff could "not insulate himself from a pending dismissal by opportunistically invoking the FMLA"). However, we need not resolve this quandary.

Tilley's termination letter creates a disputed issue of fact as to whether KCRC would have terminated notwithstanding Tilley's alleged failure to adequately complete the three tasks

- 15 -

assigned by Bartholomew. That is, it cannot be said that Tilley's "dismissal would have occurred regardless of [his] request for or taking of FMLA leave." *Arban*, 345 F.3d at 401. Rather, the termination letter's description of Bartholomew's attempt to locate the emergency pager, along with citations to disciplinary sections immediately following, creates an inference that KCRC terminated Tilley for his use of FMLA leave. After all, once Tilley's wife relayed to Bartholomew that the emergency pager might be in Tilley's truck and it was not located in the truck, what further obligation did Tilley have to KCRC? The expectation that Tilley should have done more and then was punished for not doing more distinguishes this case from *Reilly*. *See* 620 F. Supp. 2d at 535-37 (describing how plaintiff's employer allowed plaintiff to use her full twelve weeks of leave even though attempts to contact her during her leave were made). All of this explanation is to say that there is sufficient evidence to suggest that Tilley's use of FMLA, at least in part, motivated KCRC to terminate him. *See Wallner v. Hilliard*, 590 F. App'x 546, 554 (6th Cir. 2014) ("[Plaintiff] may succeed on her FMLA retaliation claim even if multiple factors contributed to [the employer]'s decision to discharge her; she is entitled to a jury so long as a reasonable one could find that both permissible and impermissible factors motivated the termination decision." (citing *Hunter*, 579 F.3d at 692)). For that reason, we find a genuine issue of material fact exists with respect to Tilley's interference claim.

B.

To establish a claim for retaliation, Tilley must show that:

(1) he engaged in an activity protected by the Act; (2) that this exercise of his protected rights was known to the defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.

*Arban*, 345 F.3d at 404. Tilley claims that the district court erred in finding that he failed to establish a prima facie case of retaliation. Additionally, same as his argument for his interference claim, Tilley relies on his termination letter as direct evidence to rebut KCRC's claim that his termination was not related to his leave. We, however, resolve Tilley's retaliation claim in the same manner as his interference claim—that is, applying the burden-shifting framework to this claim.

> In analyzing Tilley's prima facie case, the district court considered the following:
>
> The parties dispute whether Plaintiff's absence beginning on August 1 was an exercise of his rights under FMLA and whether he provided adequate notice that his absence qualified him for rights under FMLA. It is undisputed that Plaintiff did not formally request FMLA leave until August 17, 2011, two days after his effective termination date. Although Plaintiff claims he notified Mr. Bartholomew by telephone regarding his medical status, Plaintiff failed to submit the FMLA certification paperwork as completed by his physician until after his termination.

As previously discussed in Tilley's interference claim, notice of FMLA leave does not generally turn on when the employer receives formal certification paperwork when leave is unforeseeable, as it was here. *See generally Branham v. Gannett Satellite Info. Network, Inc.*, 619 F.3d 563, 572 (6th Cir. 2010) ("The regulations specify that when leave is unforeseeable, the employer must give the employee at least fifteen calendar days to provide the requested certification, and more time if it is not practicable under the circumstances to do so within fifteen days." (citing 29 C.F.R. § 825.305(b))). Rather, the regulations require an employee to timely provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303(b). Again, it does not appear that KCRC questions

whether it received adequate notice of Tilley's intent to use FMLA leave.[2] As a result, there are sufficient facts to defeat summary judgment on this prong.

Next, KCRC challenges the sufficiency of Tilley's reliance on the timing of his termination as a basis for establishing causation under the fourth prong. Specifically, KCRC takes issue with Tilley's citation to *Chandler*, 283 F.3d at 821, to support his position. This court has grappled with the issue of whether temporal proximity alone is enough to support an inference of causation for a prima facie case of retaliation. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-25 (6th Cir. 2008) (listing cases in this circuit where courts have found timing both sufficient and insufficient to establish causation for a prima facie case). But this case does not require reaching the question of whether temporal proximity alone is enough to establish causation. Instead, temporal proximity plus KCRC's citation to Tilley's failure to communicate about the location of the pager is sufficient to raise a question of fact for the jury to decide. *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." (citations omitted)). By citing Tilley's failure to work while on leave, Bartholomew indicated that Tilley's use of FMLA leave, at least in part, motivated his termination. Therefore, Tilley has raised a sufficient question of fact for the jury as to causation.

Typically, once an employee establishes a prima facie case for retaliation, the burden shifts back to the employer to state a non-discriminatory basis for terminating the employee. *See, e.g.*, *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012). Again, KCRC's citation to Tilley's failure to communicate about the location of the pager in the termination letter provides

---

[2] With respect to Tilley's prima facie case, the briefs filed by the parties with the district court focused almost exclusively on two issues: whether Tilley was an "eligible employee" for the purpose of the FMLA and if Tilley could demonstrate that he would have not been terminated regardless of his leave.

indirect evidence that Tilley's use of FMLA potentially motivated KCRC.[3]  Accordingly, we find that the retaliation claim also survives summary judgment.

## IV.

For the reasons explained above, the district court erred by granting KCRC's summary judgment motion on Tilley's interference and retaliation claims.

**REVERSED AND REMANDED**.

---

[3] Certainly, not all interference and retaliation claims overlap in such a way that makes their analysis almost identical.  *See Wallner v. Hilliard*, 590 F. App'x 546, 551 (6th Cir. 2014) ("[T]he mere fact that two statutory provisions may both be implicated by a single act does not mean that the two provisions are perfectly coextensive.") Those situations often include "where a plaintiff does not dispute that she has been granted all of the FMLA leave that she requested, has received all of the leave to which she was entitled, and has been reinstated upon her return to work." *Id*. (citing *Seeger*, 681 F.3d at 282).  But this is not one of those cases.  Here, the facts giving rise to the only viable interference claim are the same as that supporting the retaliation claim.  This seems to have been the case in *Arban* as well.  *See Arban*, 345 F. 3d at 402-03 (relying on the same set of facts about the plaintiff having to work while on leave as the basis for both the interference and retaliation claims).